UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

Jamilla Clark and Arwa Aziz on Behalf of Themselves and Others Similarly Situated, and Turning Point for Women and Families;

18 Civ. 2334 (RWS)(KHP)

**ORAL ARGUMENT**
**AUGUST 7, 2018 AT NOON**

Plaintiffs,

-against-

The City of New York,

Defendant.

-------------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, New York 10007*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................ 1

FED. R. CIV. P. 12(B)(6) STANDARD FOR DISMISSAL.......................................................... 2

ARGUMENT

    POINT I

           PLAINTIFFS LACK STANDING TO PURSUE
           INJUNCTIVE OR DECLARATORY RELIEF ........................................... 3

           A.   Plaintiffs Can Only Bring RLUIPA Claims for
               Injunctive or Declaratory Relief ............................................................4

           B.   Standing, Generally ................................................................................4

           C.   The Prospect of Future Harm to Plaintiffs Is
               Merely Speculative ................................................................................5

               1.   Past Injuries Do Not Confer Standing for
                    Injunctive Relief ..........................................................................5

               2.   The Likelihood of Future Harm to
                    Plaintiffs Clark and Aziz Is Too
                    Speculative ....................................................................................6

               3.   One to Two Prior Incidents Are
                      Insufficient to Confer Standing....................................................9

               D.   Plaintiff Turning Point Lacks Standing to Sue
                for Monetary or Injunctive Relief ........................................................9

    POINT II

           PLAINTIFFS HAVE NOT ADEQUATELY
           ALLEGED A FIRST AMENDMENT VIOLATION .............................. 12

           A.   NYPD's Photograph Policy Is a Neutral
                Provision of General Applicability....................................................12

B.  NYPD's Photograph Policy Is Reasonably
Related to a Recognized City Interest ................................................13

POINT III

THERE IS NO STATE LAW RELIGIOUS
DISCRIMINATION TORT ....................................................................... 16

A.  Plaintiffs Do Not Have a Private Right of
Action Under New York State Constitution,
Article I, Section 3..............................................................................16

B.  Plaintiffs Have Not Adequately Alleged a New
York State Constitutional Claim ........................................................17

POINT IV

PLAINTIFF AZIZ'S INDIVIDUAL STATE LAW
CLAIM SEEKING MONEY DAMAGES MUST
BE DISMISSED FOR FAILURE TO COMPLY
WITH N.Y. GEN. MUN. LAW ................................................................ 19

POINT V

THE CITY OF NEW YORK IS IMMUNE FROM
PUNITIVE DAMAGES ........................................................................... 20

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages**

*Aiken v. Nixon*,
   236 F. Supp. 2d 211 (N.D.N.Y 2002) ........................................................................ 6

*Alvarez v. City of Chi.*,
   649 F. Supp. 43 (N.D. Ill. 1986) ........................................................................... 13

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ......................................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 2

*Biswas v. City of New York*,
   973 F. Supp 2d 504 (S.D.N.Y. 2013) .................................................................. 17

*Brass v. Am. Film. Techs.*,
   987 F.2d 142 (2d Cir. 1993) .................................................................................. 3

*Brown v. New York*,
   89 N.Y.2d 172 (N.Y. 1996) ................................................................................ 16

*Campbell v. City of New York*,
   09 Civ. 3306 (FB) (JO), 2011 U.S. Dist. LEXIS 144352 (E.D.N.Y. Dec. 15, 2011) .............. 17

*Canzoneri v. Inc. Vill. of Rockville Ctr.*,
   986 F. Supp.2d 194 (E.D.N.Y. 2013) ................................................................. 19

*Catholic Charities of Dioecese of Albany v. Serio*,
   7 N.Y.2d 510 (N.Y. 2005) .................................................................................. 18

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .................................................................................. 3

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................ 6, 9

*City of Newport v. Fact Concerts, Incorporated*,
   453 U.S. 247 (1981) ............................................................................................. 20

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
   70 N.Y.2d 382 (N.Y. 1987) ................................................................................ 20

**Cases**                                                                                                               **Pages**

*Corcoran v. New York Power Auth.*,
   202 F.3d 530 (2d Cir. 1999) ................................................................................ 19

*Curry v. City of New York*,
   10 Civ. 5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461 (E.D.N.Y. Dec. 22, 2010 ............... 6

*D.H., et al. v. City of New York, et al.*,
   16 Civ. 7698 (PKC)(KNF), 2018 U.S. Dist. LEXIS 4717 (S.D.N.Y. Jan. 9, 2018) ................. 7

*Davidson v. Bronx Municipal Hospital*,
   64 N.Y.2d 59 (N.Y. 1984) ................................................................................. 19

*DiSorbo v. Hoy*,
   343 F.3d 172 (2d Cir. 2003) ............................................................................... 20

*Fifth Ave. Presbyterian Church v. City of New York*,
   293 F.3d 570 (2d Cir. 2002) ............................................................................... 12

*Florence v. Bd. of Chosen Freeholders*,
   132 S. Ct. 1510 (2012) ...................................................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................................... 5

*Fromer v. Scully*,
   874 F.2d 69 (2d Cir. 1989) .................................................................................. 15

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008) ................................................................................... 2

*Harty v. Simon Property Group, L.P.*,
   428 Fed. App'x. 69 (2d Cir. 2011) ......................................................................... 5

*Henry v. Lucky Strike Entertainment*,
   10 Civ. 3682 (RRM),
   2013 U.S. Dist. LEXIS 124939 (E.D.N.Y. Sept. 1, 2013) ............................................. 6

*Hershey v. Goldstein*,
   938 F. Supp. 2d 491 (S.D.N.Y. 2013) .................................................................... 17

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) .............................................................................. 9

*Holland v. Goord*,
   758 F.3d 215 (2d Cir. 2014) .................................................................................. 4

**<u>Cases</u>** **<u>Pages</u>**

*Hyde v. Arresting Officer Caputo*,
  98 Civ. 6722, 2001 U.S. Dist. LEXIS 6253 (E.D.N.Y. May 11, 2001).................................. 19

*Jean-Laurent v. Wilkerson*,
  461 Fed. Appx. 18 (2d Cir. 2012) ...................................................................................... 19

*Johnson v. Kings County DA's Office*,
  308 A.D.2d 278 (2d Dept 2003) ........................................................................................ 20

*Keaton v. Ponte*,
  16 Civ. 3063 (KPF), 2017 U.S. Dist. LEXIS 124303 (S.D.N.Y. Aug. 4, 2017) ...................... 4

*Kirkendall v. Halliburton*,
  707 F.3d 173 (2d Cir. 2013).................................................................................................. 2

*Krohn v. New York City Police Dep't*,
  2 N.Y.3d 329 (N.Y. 2004) .................................................................................................. 20

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)................................................................................................... 2

*Lewis v. Casey*,
  518 U.S. 343 (1996)............................................................................................................... 5

*Liu v. The New York City Campaign Finance Board*,
  14 Civ. 1687 (RJS), 2016 U.S. Dist. LEXIS 135687 (S.D.N.Y. Sept. 29, 2016)...................... 8

*Loccenitt v. City of N.Y.*,
  12 Civ. 948 (LTS)(MHD), 2013 U.S. Dist. LEXIS 36330 (S.D.N.Y. Mar. 15, 2013)............... 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................... 5

*MacIsaac v. Town of Poughkeepsie*,
  770 F. Supp. 2d 587 (S.D.N.Y. 2011)..................................................................................... 7

*MacNamara v. City of New York*,
  275 F.R.D. 125 (S.D.N.Y 2011) ...................................................................................... 5, 7, 8

*Marcavage v. The City of New York*,
  689 F.3d 98 (2d Cir. 2012)..................................................................................................... 5

*Martinez v. City of Schenectady*,
  97 N.Y.2d 78 (N.Y. 2001) .............................................................................................. 16, 17

**Cases**                  **Pages**

*McLennon v. City of New York*,
 171 F. Supp. 3d 69 (E.D.N.Y. 2016) ..................................................................... 7

*Mejia v. City of New York*,
 119 F. Supp. 2d 232 (E.D.N.Y. 2000) ................................................................. 19

*Nicosia v. Amazon.com, Inc.*,
 15 Civ. 423, 2016 U.S. App. LEXIS 15656 (2d Cir. Aug. 25, 2016)......................... 5

*O'Connell v. Onondaga County*,
 09 Civ. 364, 2012 U.S. Dist. LEXIS 194831 (N.D.N.Y. Feb. 9, 2012) .................... 19

*O'Shea v. Littleton*,
 414 U.S. 488 (1974) ..................................................................................... 5, 6

*Powell v. City of N.Y.*,
 14 Civ. 9937 (PAC)(BCM), 2016 U.S. Dist. LEXIS 94186 (S.D.N.Y. July 14, 2016) ............ 4

*Ramrattan v. Fischer*,
 13 Civ. 6890 (KPF),
 2015 U.S. Dist. LEXIS 74510, 2015 WL 3604242 (S.D.N.Y. June 9, 2015) ............ 4

*Salahuddin v. Goord*,
 467 F.3d 263 (2d Cir. 2006)............................................................................. 13

*Seabrook v. City of New York*,
 2000 U.S. App. LEXIS 6218 (2d Cir. Apr. 4, 2000) .............................................. 12

*Shain v. Ellison*,
 356 F.3d 211 (2d Cir. 2004)............................................................................ 6, 8

*Shakur v. McGrath*,
 517 F.2d 983 (2d Cir. 1975)............................................................................. 19

*Sharapata v. Town of Islip*,
 56 N.Y.2d 332 (N.Y. 1982) .............................................................................. 20

*Shepard v. Fisher*,
 08 Civ. 9297 (RA), 2017 U.S. Dist. LEXIS 22772 (S.D.N.Y. Feb. 16, 2017)........... 4

*Soliman v. City of New York*,
 15 Civ. 5210 (PKC)(RER), 2017 U.S. Dist. Lexis 50599 (E.D.N.Y. Mar. 31, 2017)............. 13

*Susan B. Anthony List v. Driehaus*,
 134 S. Ct. 2334, 2341 (2014)............................................................................ 4

**Cases**                                                                                                                    **Pages**

*Targum v. Citrin Cooperman & Co., LLC*,
   12 Civ. 6909 (SAS), 2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ......................................... 2

*Tasini v. New York Times Corp., Inc.*,
   184 F. Supp. 2d 350 (S.D.N.Y. 2002) ...................................................................................... 4

*Turner v. Safley*,
   482 U.S. 78 (1987) ................................................................................................... 13, 15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP*,
   549 F.3d 100 (2d Cir. 2008) ...................................................................................... 5

*Wahad v. FBI*,
   994 F. Supp. 237 (S.D.N.Y. 1998) ............................................................................. 17

*Warner v. Village of Goshen Police Dep't.*,
   256 F. Supp.2d 171 (S.D.N.Y. 2003) ........................................................................ 19

*Williams v. City of New York*,
   34 F. Supp. 3d 292 (S.D.N.Y. 2014) .................................................................. passim

*Zargary v. City of New York*,
   607 F. Supp. 2d 609 (S.D.N.Y. 2009),
   *affrm'd Zargary v. City of New York*, 4
   12 Fed. Appx. 339 (2d Cir. 2011) ............................................................... 14, 15, 18

**Statutes**

42 U.S.C. § 1983 ..................................................................................................... passim

42 U.S.C. § 2000cc ................................................................................................. passim

**Rules**

FED. R. CIV. P. 12(b)(1) ...................................................................................... 2, 3, 4, 21

FED. R. CIV. P. 12(b)(6) ......................................................................................... 2, 3, 21

FED. R. CIV. P. 23(b)(2) ............................................................................................... 3, 7

FED. R. CIV. P. 23(b)(3) ............................................................................................. 1, 16

FED. R. CIV. P. 57 ................................................................................................ 1, 10, 11

## PRELIMINARY STATEMENT

Two individually named plaintiffs and one organizational plaintiff bring this action against the City of New York (hereinafter "City") pursuant to 42 U.S.C. § 1983 and New York State law alleging four claims for relief relating to the New York City Police Department's (hereinafter "NYPD") "Photograph Policy" requiring that all individuals arrested by the NYPD have their photograph taken without any head covering. Plaintiffs Clark and Aziz sue on behalf of a putative class of similarly situated individuals, defined as those "(a) arrested by or in the custody of the NYPD, (b) required to take a post-arrest Booking Photograph while in any NYPD facility; and (3) forced to remove any religious head covering for that Booking Photograph pursuant to the Photograph Policy or any other written or unwritten policy of the NYPD." Complaint, Annexed to the Declaration of Suzanna Mettham dated June 13, 2018 ("Mettham Dec.") as Exhibit A, at ¶69.

Plaintiffs first allege a claim against defendant City on behalf of the putative class and plaintiff Turning Point[1] for alleged violations of their rights under the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA"), 42 U.S.C. § 2000cc. In their second and third causes of action, Plaintiffs allege violations of the Free Exercise Clause under both 42 U.S.C. § 1983 and the New York State Constitution, Article I, Section 3 on behalf of the putative class. Finally, all plaintiffs seek declaratory and injunctive relief under FED. R. CIV. P. 57 and 28 U.S.C. §§ 2201-02. Plaintiffs seek (1) to enjoin Defendant City from requiring the removal of any religious head or hair coverings for the purpose of post-arrest photographs, (2) monetary relief pursuant to FED. R. CIV. P. 23(b)(3) for the putative class, (3) punitive damages for all Plaintiffs, and (4) money damages for Plaintiff Turning Point.

---

[1] Plaintiff Turning Point sues only on its own behalf and claims that it is entitled to individual damages.

While Plaintiff Turning Point alleges individual damages, plaintiffs Aziz and Clark only seek relief on behalf of the putative class. Compl., Ex. A at p. 25 ("Plaintiffs Clark and Aziz, on behalf of the Class, and Plaintiff Turning Point, respectfully request an order certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23, and request judgment against Defendant[.]").

As discussed more fully below, Defendant City moves for dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (1) because Plaintiffs lack standing to pursue injunctive and declaratory relief, and therefore, they may not pursue their First and Fourth Causes of Action; (2) because the NYPD Photograph Policy is constitutional, and therefore, any class action premised on its unconstitutionality must fail; and (3) because there is no State Law discrimination tort.

## FED. R. CIV. P. 12(B)(6) STANDARD FOR DISMISSAL

Defendant City now moves to dismiss this action pursuant to FED. R. CIV. P. 12(b)(6), which states that a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "provide grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness. *Targum v. Citrin Cooperman & Co., LLC*, 12 Civ. 6909 (SAS), 2013 WL 6087400, *3, n.60 (S.D.N.Y. Nov. 19, 2013) (citing *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

When determining the sufficiency of a complaint for the purpose of Rule 12(b)(6) "consideration is limited to the factual allegations in plaintiff's complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff has knowledge and relied on in bringing the suit." *Brass v. Am. Film. Techs.*, 987 F.2d 142, 150 (2d Cir. 1993). Where a document is not incorporated by reference, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal citations omitted).

Here, Defendant City relies on and references documents in Plaintiffs' possession that are integral to Plaintiffs' claims, such as Notices of Claim and Plaintiff Turning Point's own website.

## ARGUMENT

## POINT I

### PLAINTIFFS LACK STANDING TO PURSUE INJUNCTIVE OR DECLARATORY RELIEF

Plaintiffs' First Cause of Action for violation of RLUIPA and their Fourth Cause of Action for Declaratory Judgment each seek declaratory and injunctive relief against Defendant City. Plaintiffs *do not* seek to certify a class pursuant to FED. R. CIV. P. 23(b)(2) for declaratory and/or injunctive relief.[2] Compl., Ex. A, at ¶69 ("Plaintiffs Clark and Aziz bring this suit under Federal Rule of Civil Procedure 23(b)(1)(A) and (b)(3)"). However, Plaintiffs Clark and Aziz lack standing under FED. R. CIV. P. 12(b)(1) to pursue injunctive relief on behalf of themselves

---

[2] It appears from the Complaint that Plaintiffs seek money damages for their Second and Third Causes of Action relating to the claimed violation of their right to the Free Exercise of Religion under State and Federal Law. However, to the extent Plaintiffs *in fact* seek injunctive and/or declaratory relief under these causes of action, they cannot, for the same reasons stated *infra*.

or the putative class they seek to represent because they fail to plead a sufficient likelihood of future harm.

## A. Plaintiffs Can Only Bring RLUIPA Claims for Injunctive or Declaratory Relief

"Money damages are not available under RLUIPA." *Powell v. City of N.Y.*, 14 Civ. 9937 (PAC)(BCM), 2016 U.S. Dist. LEXIS 94186, at *20 (S.D.N.Y. July 14, 2016) (dismissing RLUIPA claim against City of New York); *see also Keaton v. Ponte*, 16 Civ. 3063 (KPF), 2017 U.S. Dist. LEXIS 124303, at *18-19 (S.D.N.Y. Aug. 4, 2017) ("RLUIPA claims for money damages fail because RLUIPA does not afford a plaintiff a cause of action for money damages against individual defendants in either their official or individual capacities.")[3] (citing *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *Ramrattan v. Fischer*, 13 Civ. 6890 (KPF), 2015 U.S. Dist. LEXIS 74510, 2015 WL 3604242, at *9 (S.D.N.Y. June 9, 2015)) (internal citations omitted); *Loccenitt v. City of N.Y.*, 12 Civ. 948 (LTS)(MHD), 2013 U.S. Dist. LEXIS 36330, at *20 (S.D.N.Y. Mar. 15, 2013); *Shepard v. Fisher*, 08 Civ. 9297 (RA), 2017 U.S. Dist. LEXIS 22772, at *97 (S.D.N.Y. Feb. 16, 2017).

Accordingly, Plaintiffs may only seek declaratory and injunctive relief against Defendant City for alleged violations of RLUIPA and for the reasons stated below, Plaintiffs lack standing to bring a claim for declaratory and injunctive relief. Therefore, Plaintiffs' claims pursuant to RLUIPA must be dismissed.

## B. Standing, Generally

A Court's jurisdiction is limited to an actual case or controversy. *See* U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). "An objection to standing is properly made on a

---

[3] "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, if monetary damages are unavailable against an individual in an official capacity suit, they are similarly unavailable against the governmental entity under RLUIPA.

Rule 12(b)(1) motion." *Williams v. City of New York*, 34 F. Supp. 3d 292, 294 (S.D.N.Y. 2014) (quoting *Tasini v. New York Times Corp., Inc.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002)). In fact, "[s]tanding for an equitable claim must appear on the face of the complaint in order to survive a motion to dismiss." *Aiken v. Nixon*, 236 F. Supp. 2d 211, 221 (N.D.N.Y 2002) (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974)). Moreover, "[f]or each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Nicosia v. Amazon.com, Inc.*, 15 Civ. 423, 2016 U.S. App. LEXIS 15656, at *36 (2d Cir. Aug. 25, 2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). Additionally, Plaintiffs "must allege that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *MacNamara v. City of New York*, 275 F.R.D. 125, 140 (S.D.N.Y 2011) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

"In order to establish standing, a plaintiff must prove: (1) injury-in-fact, or a concrete and particularized harm to a legally protected interest; (2) causation, or a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury will be redressed by a favorable decision." *Williams*, 34 F. Supp. 3d at 295 (citing *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs have not met their burden to prove a non-speculative threat of future injury, or redressability.

**C.**     **The Prospect of Future Harm to Plaintiffs Is Merely Speculative**

    *1.*     *Past Injuries Do Not Confer Standing for Injunctive Relief*

Past injuries do not confer standing to seek injunctive relief unless a plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way. *See*, *e.g.*,

*Marcavage v. The City of New York*, 689 F.3d 98, 103 (2d Cir. 2012); *Harty v. Simon Property Group, L.P.*, 428 Fed. App'x. 69, 71 (2d Cir. 2011). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. "In other words, [a plaintiff] asserting an injunction . . . must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." *Curry v. City of New York*, 10 Civ. 5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461, at *8 (E.D.N.Y. Dec. 22, 2010) (internal citation omitted). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *O'Shea*, 414 U.S. at 494).

## 2.      *The Likelihood of Future Harm to Plaintiffs Clark and Aziz Is Too Speculative*

"[I]n order to demonstrate that they have standing to pursue claims for injunctive relief, plaintiffs must show a real and immediate threat of repeated injury." *Henry v. Lucky Strike Entertainment*, 10 Civ. 3682 (RRM), 2013 U.S. Dist. LEXIS 124939, at *42 (E.D.N.Y. Sept. 1, 2013). This possibility of future injury must be particular and concrete. *See O'Shea*, 414 U.S. at 496-97. An "abstract injury is not enough." *Shain*, 356 F.3d at 215.

The seminal case in this regard, *City of L.A. v. Lyons*, 461 U.S. 95 (1983), "occupies much of the territory" related to a citizen's standing to seek an injunction against police practices surrounding arrests. *Williams*, 34 F. Supp.3d at 296 (citing *Shain*, 356 F.3d at 215). In *Lyons*, the plaintiff alleged that he feared again being subjected to an illegal chokehold, and given the extensive use of chokeholds by the Los Angeles police, that he should be afforded standing to seek injunctive relief. *See generally Lyons*, 461 U.S. 95. However, the United States Supreme Court held that the risk that plaintiff himself would come into contact with the police and suffer a

subsequent unlawful chokehold was speculative in nature and insufficient to confer equitable standing. *Id.* at 109.

Courts in this Circuit have repeatedly confirmed that the likelihood of future unconstitutional treatment by the police in the course of an arrest is too speculative to confer standing. *See*, *e.g.*, *MacIsaac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (plaintiff's claim that he would be stopped, arrested and subjected to a Taser gun again was speculative, and injunctive relief therefore denied); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 74-76 (E.D.N.Y. 2016) (plaintiffs alleging suspicionless searches and seizures at *de facto* vehicle checkpoints denied standing for injunctive relief where likelihood of similar alleged constitutional harm by NYPD in future was too speculative); *Williams*, 34 F. Supp. 3d at 294 (plaintiff lacked standing for injunctive relief under the ADA requiring the NYPD to provide accommodations to hearing-impaired persons upon arrest and incarceration because likelihood of future arrest by NYPD too speculative); *MacNamara*, 275 F.R.D. at 140-141 (plaintiffs denied class certification, as they could make only a speculative showing of future harm from alleged NYPD mass protest arrest practices in question); *D.H., et al. v. City of New York, et al.*, 16 Civ. 7698 (PKC)(KNF), 2018 U.S. Dist. LEXIS 4717, at **8-17 (S.D.N.Y. Jan. 9, 2018) (all but one plaintiff lacked standing to sue for declaratory and injunctive relief because likelihood of future arrest under allegedly unlawful statute not "imminent").

Notably, even where plaintiffs have expressed an intention to engage in future, similar activities to those which they allege caused them to be subjected to past harm, courts have denied standing for injunctive relief, deeming allegations of future similar harm still too speculative. For example, in *MacNamara*, class certification for injunctive relief under Rule 23(b)(2) was denied due to lack of standing on the grounds that plaintiffs, arrested during the 2004 RNC convention

protests, and who sought to enjoin certain allegedly "unconstitutional" practices employed by the NYPD in effecting mass arrests during protests, could make only a speculative showing of future harm from the practices in question. *MacNamara*, 275 F.R.D. at 140-141. This was in spite of the fact that, "[t]o support their assertion of likely future harm, plaintiffs cite[d] the depositions of [putative class members] who have indeterminate future plans to participate in New York City protests," which would presumably bring them into contact with the NYPD and the complained-of practices in the future. There, the court found that plaintiffs' alleged future harm – that they faced potential arrest since several class representatives planned to attend demonstrations in New York in the future – was "too speculative and conjectural to supply a predicate for prospective injunctive relief." *Id.* at 141 (internal citations and quotations omitted); *see also Liu v. The New York City Campaign Finance Board*, 14 Civ. 1687 (RJS), 2016 U.S. Dist. LEXIS 135687 (S.D.N.Y. Sept. 29, 2016) (plaintiff's statement that he "may run for elective office in New York City in the future" deemed too speculative and lacking the requisite imminence of future harm to support standing to challenge campaign finance provision); *Shain*, 356 F.3d at 216 (denying claim for prospective relief predicated on "an accumulation of inferences" that were "simply too speculative and conjectural" to show "sufficient likelihood of future [injury]").

Here, Plaintiffs only complain of one prior interaction with police each. Because Plaintiffs can only speculate that they may be arrested again and taken to Central Booking, they cannot show a likelihood of future harm. *See Williams*, 34 F. Supp. 3d at 296-297. In fact, Plaintiff Clark admits that she is now a resident of New Jersey. Compl., Ex. A, at ¶ 10. Plaintiff Clark has not alleged an intention to return to New York City, but even if she had, it would be insufficient to confer standing since she is not "necessarily or even likely have any contact with the police in the future." *Williams*, 34 F. Supp. 3d at 297. Plaintiff Aziz, who continues to reside

in New York City, has not alleged that she intends to have any future interaction with the NYPD. For these reasons, Plaintiffs' claims for declaratory and injunctive relief should be dismissed.

### 3. One to Two Prior Incidents Are Insufficient to Confer Standing

Where an unconstitutional interaction has occurred only once or twice in several years, a plaintiff lacks standing to pursue injunctive relief because it is unlikely that she will confront the same issues again. *See*, *e.g.*, *Lyons*, 461 U.S. at 101-02 (one past incident involving a plaintiff and the police was insufficient to confer standing); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (motorists stopped by Border Patrol once in ten years had no standing); *Alvarez v. City of Chi.*, 649 F. Supp. 43, 45 (N.D. Ill. 1986) (no injunction for only two incidents of police misconduct in six years). Plaintiffs fall far short of the standard of showing "certainly impending" future injury, particularly as each plaintiff only complains of a single arrest by the NYPD in which her rights were allegedly violated.[4] In fact, each Plaintiff claims that the criminal charges were manufactured by relatives, Compl., Ex. A, at ¶¶ 52, 58, and the likelihood of a future similar unjustified arrest is slim.

### D. Plaintiff Turning Point Lacks Standing to Sue for Monetary or Injunctive Relief

Turning Point alleges that "[m]any of Turning Point's constituents have been forced by NYPD officers to remove hijabs and other religious head coverings for post-arrest photographs. The Photograph Policy has, for this reason, harmed plaintiff Turning Point, which advocates for Muslim women and girls throughout New York City." Compl., Ex. A, at ¶ 48. Turning Point further alleges (1) that they diverted limited resources to counsel women as a result of the Photograph Policy, and (2) that they have plans *in the future* to "implement further measures to remedy the Photograph Policy's harm to the community, including but not limited to youth

---

[4] Notably, plaintiff Clark alleges a prior arrest by the NYPD, but does not allege that her rights were violated on that occasion. Complaint at ¶ 52.

outreach and a 'Know Your Rights' campaign." Compl., Ex. A, ¶ 49. Turning Point's only claims are plaintiffs' First and Fourth Causes of Action—under RLUIPA and their claim for injunctive and declaratory relief pursuant to FED. R. CIV. P. 57. These claimed injuries are insufficient to confer standing on Turning Point, who must be dismissed as a party.

Organizations may meet Article III standing requirements by (1) suing on behalf of their members, *N. Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012), *or* an organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). In either case, "the organization must 'meet the same standing test that applies to individuals by showing [an] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'" *Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998)* (quoting *Spann v. Colonial Vill., Inc*., 899 F.2d 24, 27 (D.C. Cir. 1990)*).*

Plaintiff Turning Point first attempts to base their standing on the claim that harm to their constituents also harms them. Compl., Ex. A, at ¶48. However, this is not appropriate as those women (such as Plaintiffs Clark and Aziz) are capable of bringing claims on their own behalf. *See*, *e.g.*, *Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574 (S.D.N.Y. 2013) (Organization lacked standing because it "does not allege that *it* suffers any personal injury separate and apart from the interests of the local Orthodox community."). Therefore, the only way Plaintiff Turning Point is able to have standing to sue is if they can articulate a specific, individualized harm to them, caused by the defendant. Plaintiff Turning Point has failed to do so.

Instead, Plaintiff Turning Point alleges that in the future they *may* have to spend additional funds to conduct youth outreach or a 'Know Your Rights' campaign. Compl., Ex. A, at ¶49. Such a claim is insufficient because it is entirely speculative. *Id.* at 593 ("an organization, is fully able to bring suit on its own behalf for injuries it has sustained, so long as those injuries—or threats of injury—are both real and immediate, [and] not conjectural or hypothetical") (internal quotations and citations omitted). Moreover, even if Plaintiff Turning Point *had* already spent funds on such outreach or campaign, it cannot be considered "wast[ed] resources by educating the public and issuing statements concerning the effects of Defendant's alleged constitutional violations or even by filing suit; this is exactly *how* an organization like [plaintiff] spends its resources in the ordinary course." *Citizens for Responsibility & Ethics in Wash. v. Trump*, 276 F. Supp. 3d 174, 191-92 (S.D.N.Y. 2018).

Plaintiff Turning Point's website advertises that providing counseling services to the Muslim community regarding their interactions with police and providing youth outreach is already part of their mission. *See* "Services" section of Turning Point for Women and Families website, http://tpny.org/services/, last accessed by counsel on May 25, 2018, annexed to Mettham Dec. as Exhibit C. On the matter of diverting resources to provide additional counseling to women allegedly harmed by the Photography Policy, Plaintiff Turning Point cannot claim that it is harmed. Its decision about how and whom to counsel "at the expense of its other initiatives reflects a choice about where and how to allocate its resources— one that almost all organizations with finite resources have to make." *Id.* at 191. In fact, Courts in this District have expressly held that "[i]f [an organizational plaintiff] could satisfy the standing requirement on this basis alone, it is difficult to see how any organization that claims it has directed resources to one project rather than another would not automatically have standing to sue." *Id.*

Because none of the Plaintiffs have proper standing to sue for injunctive or declaratory relief, their First Cause of Action under RLUIPA and their Fourth Cause of Action for declaratory and injunctive relief pursuant to FED. R. CIV. P. 57 must be dismissed.

## POINT II

### PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED A FIRST AMENDMENT VIOLATION

Plaintiffs' Second Cause of Action seeks monetary relief pursuant to FED. R. CIV. P. 23(b) on behalf of the putative class under 42 U.S.C. § 1983. Compl., Ex. A, at ¶¶ 94-98. Specifically, Plaintiffs claim that the NYPD Photograph Policy deprives the putative class members of their right to freely exercise their religion under the First Amendment of the Constitution. *Id.* Plaintiffs' claim should be dismissed because the Photograph Policy is reasonably related to the City's recognized interest in identifying prisoners and maintaining safety and security.

**A.     NYPD's Photograph Policy Is a Neutral Provision of General Applicability**

The Second Circuit has held that "[i]t is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy, or statute that burdens a religious practice, provided the burden is not the object of the law but merely the 'incidental effect' of an otherwise neutral provision." *Seabrook v. City of New York*, 2000 U.S. App. LEXIS 6218, *3 (2d Cir. Apr. 4, 2000). "Where the government seeks to enforce a law that is neutral and of general applicability … then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002).

Although not explicitly stated in their complaint, plaintiffs do not dispute that NYPD's Photograph Policy requiring that individuals arrested by the NYPD have their photograph taken

without any head covering is a neutral provision applied to all arrestees. Instead, Plaintiffs claim that the Photograph Policy substantially burdens the sincerely-held religious beliefs of arrestees who wear religious head coverings, specifically Muslim women who wear hijabs.[5] Compl., Ex. A, at ¶ 15. Therefore, Plaintiffs' free exercise claim must be analyzed under the rational basis test that has been applied in both prisoner and post-arrest circumstances.

**B.      NYPD's Photograph Policy Is Reasonably Related to a Recognized City Interest**

The Second Circuit has held that "[c]ourts must evaluate four factors in making [this] determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests. *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

With respect to the first factor, in analyzing whether the NYPD policy requiring arrestees to remove head coverings for arrests photos is constitutional, the Court in *Soliman* stated that "the policy is reasonably related to the City's obvious and legitimate interest in having a photographic record of arrests from which a later identification can be made." *Soliman v. City of New York*, 15 Civ. 5210 (PKC)(RER), 2017 U.S. Dist. Lexis 50599, at *20 (E.D.N.Y. Mar. 31, 2017). The plaintiff in *Soliman* was required to remove her hijab for her post-arrest booking photo and her request for a female photographer was denied. *Id.* at 8. However, the plaintiff was photographed prior to the issuance of NYPD Interim Order 29, which provides a procedure whereby an arrestee can remove their religious head covering and have their photograph taken in

---

[5] Plaintiffs are not challenging the removal of a niqab, or face viel, see Compl., Ex. A, at ¶ 16, thus implicitly recognizing the City's legitimate interest in identifying prisoners and maintaining safety and security.

private. *Id.* at 9-10. Plaintiff argued that, with or without affording arrestees a religious accommodation, requiring arrestees to remove their head covers can never be constitutional. *Id.* at 19. The Court disagreed with plaintiff's argument because the NYPD's policy of requiring all arrestees to remove head coverings "is a neutral policy of general applicability." *Id.* at 20. Plaintiff's fallback argument was that NYPD's pre-Interim Order policy of no religious accommodation "lacked a rational basis." *Id.* at 21. The Court agreed with plaintiff and denied defendants' motion to dismiss her free exercise claim "based on the theory that the NYPD had no rational basis for refusing to accommodate [plaintiff]'s religious beliefs," by permitting her to have her photograph taken privately. *Id.* at 24.

Unlike the plaintiff in *Solimon*, Plaintiffs Clark and Aziz were arrested *after* the issuance of the operative NYPD Interim Order and were offered a religious accommodation to have their photos taken in private. Compl., Ex. A, at ¶¶ 55, 60. Plaintiff Clark had her photograph taken by a female officer in a private room and Plaintiff Aziz was offered to have her photograph taken in a room at One Police Plaza. *Id.* The current Photograph Policy thus recognizes and accommodates the sincerely-held religious beliefs of arrestees who wear religious head coverings while still satisfying the City's safety and security interests. With respect to the remaining three factors, since Plaintiffs were already offered a religious accommodation with respect to removing their religious head coverings, the only alternative means of exercising this right would be to allow Plaintiffs to keep their religious coverings on. However, this alternative would frustrate the City's legitimate interest in having a photographic record of arrestees from which a later identification can be made.

Indeed, the Second Circuit has already upheld the constitutionality of a policy at a New York City jail that requires all inmates to remove their headwear for identification photographs.

*Zargary v. City of New York*, 607 F. Supp. 2d 609, 610 (S.D.N.Y. 2009), *affrm'd Zargary v. City of New York*, 412 Fed. Appx. 339, 341-342 (2d Cir. 2011). Like the Plaintiffs here, the plaintiff in *Zargary* claimed that "the City's 'custom or policy' of requiring all new prison inmates to be photographed without hats or other head coverings as part of its prisoner intake procedure violated her First Amendment rights insofar as it required her to briefly remove a headscarf she wears as part of her religious observance as an Orthodox Jew." *Id.*, 421 Fed. Appx. at 340. Following a bench trial, Judge Holwell issued findings of fact and conclusions of law, holding that requiring the removal of religious headgear "is reasonably related to the City's unassailable interests in identifying prisoners and maintaining prison and prisoner safety and security." *Id.* at 342. The Second Circuit upheld Judge Holwell's decision. *Id.* As the District Court noted:

> Being able to accurately identify inmates is clearly essential to maintain security at correctional facilities. Without institutional memory of an inmate's appearance, corrections officers who had never seen the inmate would be unable to identify her if she were new to the facility, a transferee, or an escapee. Requiring that the inmate's head be uncovered in the photograph is certainly rationally related to this objective. If an inmate's habit is to wear a hat or headdress, she could change her appearance, perhaps dramatically, in an instant by removing that hat or headdress. While there are certainly other ways for an inmate to change her facial appearance, this fact does not render Singer Correctional's policy irrational or invalid.

607 F.Supp. 2d at 613 (citing *Fromer v. Scully*, 874 F.2d 69 (2d Cir. 1989) (applying *Turner* factors to hold that institutional rule limiting inmate beards to one-inch, following an initial clean shave identification photograph did not violate religious inmates' First Amendment rights).

The NYPD's Photograph Policy here governs the photograph used while an arrestee awaits arraignment at Central Booking. The City's interest in implementing NYPD's Photograph Policy to maintain security at all Central Booking facilities throughout the City is the same as the City's interest in booking photographs used when inmates are lodged at Rikers Island. As was

the case in *Zargary*, inmates in Central Booking need to be identified quickly and properly, and without the ease of a ready identification, inmates could trade clothes and change their appearance. In fact, the Supreme Court has eliminated any distinction between a facility where detainees await the processing of their arrests and post-arraignment or post-conviction detainee, or the treatment of prisoners held for minor offenses versus those being held for more serious offenses. *See Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1515-1516 (2012). Because arrestees at Central Booking are subject to the same level of intrusion as inmates on Rikers Island following *Florence*, *Zargary* applies to Plaintiffs.

Therefore, Plaintiffs' free exercise of religion claim under 42 U.S.C. § 1983 must be dismissed.

## POINT III

## THERE IS NO STATE LAW RELIGIOUS DISCRIMINATION TORT

Plaintiffs' Third Cause of Action seeks monetary relief pursuant to FED. R. CIV. P. 23(b)(3) on behalf of the putative class under the New York State Constitution. Compl., Ex. A, at ¶¶ 101-102. Specifically, Plaintiffs claim that the NYPD Photograph Policy disallows the putative class members the free exercise of Religion under Article I, Section 3. *Id.* This claim must be dismissed because Plaintiffs do not have a private right of action nor have they plausibly pleaded a valid claim.

### A.     Plaintiffs Do Not Have a Private Right of Action Under New York State Constitution, Article I, Section 3

The New York Court of Appeals identified the following two interests to consider when analyzing whether courts should recognize an implied right of action: "the private interest that that citizens harmed by constitutional violations have an avenue of redress, and the public interest that future violations be deterred." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83

(N.Y. 2001) (citing *Brown v. New York*, 89 N.Y.2d 172 (N.Y. 1996)). The *Martinez* court further stated that courts should recognize an implied right of action only when it is "necessary to effectuate the purpose of the State constitutional protections the plaintiff invokes," and "appropriate to ensure the full realization of [plaintiff's] rights." *Id.*

Federal courts have followed the *Martinez* decision by holding that "[a]ctions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution." *Biswas v. City of New York*, 973 F. Supp 2d 504, 522 (S.D.N.Y. 2013) (citing *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." (quoting *Campbell v. City of New York*, 09 Civ. 3306 (FB) (JO), 2011 U.S. Dist. LEXIS 144352, at 13 (E.D.N.Y. Dec. 15, 2011) (internal quotation marks omitted)); *Wahad v. FBI*, 994 F. Supp. 237, 240 (S.D.N.Y. 1998) ("Section 1983 need not provide the exact same standard of relief in order to provide an adequate remedy")).

Plaintiffs brought claims under RLUIPA and § 1983 based on the same grounds. Therefore, since Plaintiffs have alternative remedies with respect to the alleged substantial burden of their religious practice, their state constitutional tort claim is redundant and must be dismissed.

**B.      Plaintiffs Have Not Adequately Alleged a New York State Constitutional Claim**

Even if the Court does infer a private right of action under the New York State Constitution, Plaintiffs' claim should nevertheless be dismissed because substantial deference is due to the City in protecting its recognized interest in identifying prisoners and maintaining safety and security. The New York Court of Appeals has recognized that when the State imposes

an incidental burden on the right of the free exercise of religion, that incidental burden must be balanced with the interests advanced by the legislation to determine whether it is justified under the New York State Constitution. *See Catholic Charities of Dioecese of Albany v. Serio*, 7 N.Y.2d 510, 525 (N.Y. 2005). The Court of Appeals further stated that "substantial deference is due the Legislature, and that the party claiming an exemption bears the burden of showing that the challenged legislation, as applied to that party, is an unreasonable interference with religious freedom." *Id.*

Applying this standard to the current NYPD Photograph Policy, as stated above, the Second Circuit already upheld a District Court's finding that requiring the removal of religious headgear "is reasonably related to the City's unassailable interests in identifying prisoners and maintaining prison and prisoner safety and security." *Zargary,* 421 Fed. Appx. at 342. Here, it is essential for NYPD Central Booking facilities to be "able to accurately identify inmates." *Zargary*, 607 F.Supp. 2d at 613. If an arrestee's habit is the wear a religious head covering, "she could change her appearance, perhaps dramatically, in an instant by removing that hat or headdress." *Id.* Thus creating a situation where Central Booking Officers "who had never seen the inmate would be unable to identify her if she were new to the facility." *Id.* Given that substantial deference is due the City in protecting its unassailable interests in maintaining safety and security, Plaintiffs have not plausibly alleged that NYPD's Photograph Policy is an unreasonable interference with religious freedom.

Therefore, Plaintiffs' free exercise of religion claim under the New York State Constitution, Article I, Section 3 must be dismissed.

**PLAINTIFF AZIZ'S INDIVIDUAL STATE
LAW CLAIM SEEKING MONEY DAMAGES
MUST BE DISMISSED FOR FAILURE TO
COMPLY WITH N.Y. GEN. MUN. LAW**

As stated above, it does not appear that Plaintiffs Clark and Aziz are seeking damages individually, separate from that which they seek on behalf of the putative class. However, to the extent that Plaintiff Aziz's state law claims seek money damages on behalf of herself, they must be dismissed due to her failure to comply with New York State notice of claim requirements.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hyde v. Arresting Officer Caputo*, 98 Civ. 6722, 2001 U.S. Dist. LEXIS 6253, at *13 (E.D.N.Y. May 11, 2001). Thus, a plaintiff can proceed in federal court with state law claims only upon compliance with the New York State notice of claim requirements. *See Warner v. Vill. of Goshen Police Dep't.*, 256 F. Supp.2d 171, 175 (S.D.N.Y. 2003). Under New York state law, a timely notice of claim is a condition precedent to filing an action against a municipal entity. *See Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18, 24 n.3 (2d Cir. 2012), Pursuant to N.Y. GEN. MUN. LAW § 50-i, a plaintiff must affirmatively plead in the complaint that the notice of claim was served. *See Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp.2d 194, 206 (E.D.N.Y. 2013). Plaintiffs bear the burden of pleading and proving compliance with the notice of claim provisions when commencing an action against a municipal actor. *See Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61-62 (N.Y. 1984); *O'Connell v. Onondaga County*, 09 Civ. 364, 2012 U.S. Dist. LEXIS 194831, at *39 (N.D.N.Y. Feb. 9, 2012). These provisions are strictly construed. *Shakur v. McGrath*, 517 F.2d 983, 985 (2d Cir. 1975). When a plaintiff's notice of claim is untimely, those claims are barred in the federal action. *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 541 (2d Cir. 1999); *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 256-57 (E.D.N.Y. 2000).

The incident involving Plaintiff Aziz occurred on August 30, 2017. *See* Ex. A at ¶58. Therefore, the last day she could have filed a notice of claim was November 28, 2017. Aziz, however, did not serve a notice of claim upon the City until December 1, 2017—93 days **after** her alleged injury. *See* eCLAIM Receipt for Aziz's Notice of Claim, dated Dec. 1, 2017, annexed to the Mettham Decl. as Exhibit B. Because Plaintiff Aziz failed to comply with the requirements of the New York General Municipal Law by filing a notice of claim within 90 days of the accrual of her claim, any state law claim for individual money damages must be dismissed.

## POINT V

## THE CITY OF NEW YORK IS IMMUNE FROM PUNITIVE DAMAGES

The City of New York, the only defendant in this action, is immune from punitive damages. The Court of Appeals has held that the City of New York, as a political subdivision of the State of New York, must be presumed immune from punitive damages, absent a clear statement of a contrary legislative intent. *See Krohn v. N.Y. City Police Dep't*, 2 N.Y.3d 329, 336 (N.Y. 2004); *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382 (N.Y. 1987); *Sharapata v. Town of Islip*, 56 N.Y.2d 332 (N.Y. 1982); *City of Newport v. Fact Concerts, Incorporated*, 453 U.S. 247, 271 (1981) (punitive damages not available in § 1983 suit against municipality challenging violations of constitutional rights); *DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003) ("punitive damages may not be awarded against a municipality under *Monell*."). Accordingly, Plaintiffs' demand for punitive damages must be dismissed. *Johnson v. Kings County DA's Office*, 308 A.D.2d 278, 296 (2d Dept 2003) (error for the Court to refuse to dismiss Plaintiff's claim for punitive damages against the City). Therefore, Plaintiffs' demand for punitive damages should be dismissed.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, Defendant City respectfully requests

that the Court grant its motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6)

together with such costs, fees and further relief as the Court deems just and proper.

Dated:     New York, New York
           June 13, 2018

                    ZACHARY W. CARTER
                    Corporation Counsel of the City of New York
                    *Attorney for Defendant*
                    100 Church Street, Rm. 3-212
                    New York, New York 10007
                    (212) 356-2356

                    By:

                        Suzanna Publicker Mettham
                        Bilal Haider