# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

June 18, 2020

**By ECF**

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:   *Clark, et al., v. City of New York*, No. 18 Civ. 02334 (AT) (KHP)

Dear Judge Torres:

For Plaintiffs, together with The Surveillance Technology Oversight Project ("STOP"), and pursuant to Individual Practice Rule III(A) and Fed. R. Civ. P. 23(b)(3), we submit the following pre-motion letter concerning class certification.

## I.   Factual Background and Proposed Class Representatives

This case challenges New York City's policy of forcing arrestees to remove religious head coverings for booking photographs.[1] Plaintiffs filed suit on March 16, 2018, alleging that this policy violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Free Exercise Clause of the First Amendment to the United States Constitution, and Article I, Section 3 of the Constitution of the State of New York. Plaintiffs seek a declaratory judgment that Defendant's policy substantially burdened Plaintiffs' religious free exercise. Plaintiffs also seek an injunction prohibiting enforcement of the policy, an order requiring the City to adopt nondiscriminatory policies, and certification of a damages class.

Plaintiffs' proposed class representatives are Jamilla Clark and Arwa Aziz. On January 9, 2017, Ms. Clark was arrested for violation of an unfounded protective order obtained by her abusive ex-husband. Compl. ¶ 52. Ms. Clark informed New York City Police Department ("NYPD") officers that, as a practicing Muslim, she was required to wear her hijab—a garment worn by many Muslim women that covers the ears, hair, and neck, but leaves the entire face

---

[1] The March 2, 2015 Interim Order 29 states: "[T]he Department requires that an official photograph be taken of an arrestee with an unobstructed view of the arrestee's head, ears, and face."

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

exposed—at all times. *Id.* ¶¶ 53, 16. Ms. Clark wears a hijab because she believes her faith dictates that no man outside of a woman's immediate family, or *mahram*, should see her uncovered hair, head, and neck. *Id.* ¶ 19.

Despite Ms. Clark's explanation of her religious beliefs, officers at NYPD Central Booking ordered Ms. Clark to remove her hijab for a mug shot. *Id.* ¶ 54. Ms. Clark reiterated that her faith prevented her from removing her hijab in front of men outside her *mahram*. *Id.* Officers informed Ms. Clark that she would be prosecuted if she did not remove her hijab. *Id.* Later, Ms. Clark was transported to One Police Plaza, where—fearful of criminal charges—she removed her hijab to be photographed in a private room. *Id.* ¶ 55.

On August 30, 2017, Plaintiff Arwa Aziz voluntarily submitted herself to NYPD custody after her sister-in-law obtained a bogus protective order. *Id.* ¶ 58. Like Ms. Clark, Ms. Aziz wears her hijab daily and believes her faith requires her to do so. *Id.* ¶ 19. At Brooklyn Central Booking, in a hallway with dozens of male prisoners, male officers demanded that Ms. Aziz remove her hijab to be photographed. *Id.* ¶ 59. Ms. Aziz said she could not remove her hijab for religious reasons. *Id.* ¶ 60. The officers told Ms. Aziz she could have her picture taken privately at One Police Plaza, but threatened to "restart" the booking process if she chose to relocate. *Id.* Having waited for close to one hour, Ms. Aziz asked the officers if she could push her hijab back to reveal her bangs and hairline for the photo. *Id.* ¶ 61. Again, the officers refused. *Id.* They again directed Ms. Aziz to remove her hijab entirely. *Id.* In tears, Ms. Aziz finally complied. *Id.* ¶ 62.

Plaintiffs have suffered lasting trauma from the forced removal of their hijabs, and the maintenance and distribution of their "uncovered" photographs. *Id.* ¶¶ 56-57, 63, 65.

## II.  A Damages Class Should Be Certified

Plaintiffs seek to represent a damages class, pursuant to Fed. R. Civ. P. 23(b)(3), consisting of all persons who, on or after March 16, 2014, were required to remove a religious head covering that does not obscure the entire face for a post-arrest photograph. Class certification is appropriate because each of the requirements set forth in Rule 23(a) and Rule 23(b)(3) is satisfied. Rule 23 is liberally construed, *see Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997), and the Second Circuit is "noticeably less deferential . . . when [a district] court has denied class status than when it has certified a class," *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Courts must err "in favor and not against the maintenance of a class action." *Sharif v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989) (citations omitted).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

### A. The Proposed Class Satisfies Fed. R. Civ. P. 23(a)

Numerosity: Fed. R. Civ. P. 23(a)(1). The proposed class—which currently consists of about 7,000 people and will grow until the City implements a lawful policy—is so large that joinder of all individual class members is impracticable. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Commonality: Fed. R. Civ. P. 23(a)(2). Here, common issues abound. Rule 23(a)(2) requires only that a "single common question" unite the proposed class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation marks and alterations omitted); *see also Marisol A.*, 126 F.3d at 377. Plaintiffs' injuries all stem from a specific, uniform practice: Defendant's religious head covering policy. *See Wal-Mart*, 564 U.S. at 356 (commonality met where "a common mode of exercising discretion" caused plaintiffs' injuries). Therefore, the "claims raised by all plaintiffs—as well as the alleged systematic failures that plaintiffs assert caused their injuries—are uniform." *Casale v. Kelly*, 257 F.R.D. 396, 412 (S.D.N.Y. 2009); *see also Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (commonality requirement met where plaintiffs "are challenging a *practice* of defendants," not merely defendants' "conduct with respect to the individual plaintiff[s]"). That Defendant's policy impacts people with a variety of different religious practices does not alter this analysis, since the policy "requires [all] class members to do something to which they are opposed due to their sincerely held religious beliefs." *DeOtte v. Azar*, 332 F.R.D. 188, 200 (N.D. Tex. 2019) (commonality and typicality satisfied in RFRA case even where class members had different religious backgrounds).

Typicality: Fed. R. Civ. P. 23(a)(3). The claims of these class representatives are "typical" because they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments" to prove Defendant's liability. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). Typicality is determined by the nature of the claims of the class representative, not the specific facts from which they arose. *See generally* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3:15 (4th ed. 2002). "[V]iewed in the most practical way, typicality is present when all members of the putative class would benefit by the success of the named plaintiff." *Cutler v. Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (citations omitted). Representatives' claims are typical where, as here, their injuries and those of the absent class members arise from application of Defendant's uniform policy. *See Robidoux*, 987 F.2d at 937 (employer discriminating "in the same general fashion" against all class members). The alleged illegality of the NYPD policy is central to all class members' damages claims. *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfies the typicality requirement.").

Adequacy of Representation: Fed. R. Civ. P. 23(a)(4). Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). First, the proposed class representatives

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

have no conflict with any class members: they were subjected to the same unlawful conduct as other class members and suffered injuries that this lawsuit seeks to remedy. *See Hirschfeld v. Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000). Second, class counsel is competent and experienced in federal class action and federal civil rights litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Emery Celli Brinckerhoff & Abady LLP ("ECBA") is a law firm with offices in New York City with extensive experience in civil rights litigation and class action lawsuits against state and local governments and agencies. *See Brown v. Kelly*, 244 F.R.D. 222, 229 (S.D.N.Y. 2007) (describing ECBA as "a preeminent civil rights firm"). STOP is a New York nonprofit that also has robust experience with civil rights litigation.

### B. This Suit Qualifies as a Class Action Under Fed. R. Civ. P. 23(b)(3)

<u>Common legal and factual questions predominate.</u> Here, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In Re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted). Predominance (and typicality) are generally satisfied unless "it is clear that individual issues will overwhelm the common questions." *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y. 1996). All class members' claims revolve around two common questions: (1) were class members forced to remove head coverings; and (2) is Defendant's policy unlawful under RLUIPA and the federal and state free exercise clauses. Common proof establishes Defendant's liability, and Defendant maintains databases that identify each person who was forced to remove a head covering and, thus, each person who was injured by Defendant's unlawful policy. Plaintiffs need only show that all class members' injuries flow from Defendant's uniform conduct. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Each class member was injured by the coerced removal of a religious head covering. Moreover, "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. This case warrants class certification because it concerns Defendant's systemic implementation of a single, uniform policy; issues surrounding liability for the coerced removal of religious head coverings provide the basis for systematic class resolution.

<u>A class action is superior to other methods of adjudication.</u> Given the sheer number of class members, a class action is superior to other methods of adjudication. Without class certification, the rights of many class members will likely never be vindicated. *See, e.g., D'alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996). When plaintiffs are "aggrieved by a single policy of the defendants"—like Defendant's policy—the case "presents precisely the type of situation for which the class action device is suited," since many nearly identical claims can be adjudicated in unison. *In re Visa Check*, 280 F.3d at 146.

<u>The putative class is ascertainable.</u> The proposed class meets Rule 23's "implied requirement of ascertainability," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015), because this Court can determine members of the class "without having to answer numerous fact-intensive questions." *Daniels*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001). Defendant has provided Plaintiffs with a spreadsheet identifying every person who was in NYPD custody and who wore a head covering between March 16, 2014 and March 16, 2018, and can supplement this disclosure

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 5

to account for the period between March 16, 2018 and the implementation of a lawful policy. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) (defendants possessed records of misdemeanor detainees strip searched during class period); *In re Visa Check*, 280 F.3d at 142 (certifying class where class members can be identified "by defendants' own records").

  For these reasons, the Court should certify the class.

                Respectfully,
                /s/
                Emma L. Freeman

cc.  All Counsel of Record