# EXHIBIT C

# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
EMERITUS

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN

September 10, 2019

*By ECF*

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *Clark, et al., v. City of New York*, No. 18 Civ. 02334 (AT) (KHP)

Dear Judge Torres:

  This firm represents Plaintiffs in the above-captioned matter. On behalf of all parties, and pursuant to this Court's Individual Rules, we write to respectfully advise the Court of a discovery dispute the parties have been unable to resolve after a good-faith meet and confer.

  Defendants object to Plaintiffs' request to use a mutually agreeable computer vision platform to search all available Prisoner Movement Slip Photographs in the NYPD's custody, possession, or control for the purpose of ascertaining members of the putative class. The parties conducted an approximately twenty-minute meet and confer by telephone on August 21, 2019. Undersigned counsel and Albert Fox Cahn were present for Plaintiff, and Rachel Seligman, Samantha Millar, and Carolyn Depoian were present for Defendant. Following this discussion, the parties exchanged two letters on August 23, 2019 and August 28, 2019 regarding the same issues, but were unable to reach an agreement despite a good-faith effort.

**Plaintiffs' Position**

  Additional searches are necessary to accurately determine the size of the putative class of people whom Defendants have forced to remove their religious head covering while in custody. One source of information about the size of the class is the City's collection of Prisoner Movement Slip photographs. The NYPD patrol guide permits arrestees to retain any religious head covering for the Prisoner Movement Slip photograph. Identifying all persons who were photographed wearing a religious head covering will allow Plaintiffs to determine whether that head covering was subsequently removed for a mugshot.

Case 1:18-cv-02334-AT-KHP Document 134-3 Filed 08/03/20 Page 3 of 6
Case 1:16-cv-02334-AT-KHP Document 86 Filed 09/20/19 Page 2 of 5

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

Plaintiffs accordingly proposed on August 1, 2019 that Defendant use Amazon's computer vision platform, Rekognition, or another mutually agreeable platform to conduct searches of Prisoner Movement Slip photographs, which are taken as soon as an arrestee is brought to the precinct following his or her arrest (as opposed to the booking photograph or mugshot, which is taken later in the booking process). To facilitate this process, Plaintiffs further proposed that a computer vision expert (either an NYPD employee or mutually agreeable expert) train the algorithm to recognize religious head coverings.

The search Plaintiffs suggest is reasonable, proportional, and necessary to a core element of this case: determining which people were subjected to the NYPD's policy. Defendant has already agreed it will conduct a search of its Complaint Report, Arrest Report, and Online Prisoner Arraignment ("OLPA") Forms using agreed-upon search terms. But Defendant has repeatedly represented that the NYPD does not consistently document, in writing, whether arrestees are wearing religious head coverings, much less whether those head coverings are forcibly removed pursuant to the governing policy. Documents Defendant has already produced in discovery bear this out: Complaint and Arrest Reports for arrestees known to have worn a religious head covering contain *no* written or "drop-down" reference to that head covering. *See, e.g.*, D000154 & 159, D000172 & 174. As Defendant's own documents reveal, the planned search of Complaint and Arrest Reports and OLPA Forms for terms that NYPD Officers may or may not have input will almost certainly yield underinclusive results. Additional search methods are essential to ensure that Plaintiffs can identify members of the putative class. *See, e.g.*, *Dorchester Investors v. Peak Trends Trust*, 2002 WL 272404, at *6 n.6 (the parties "must use the available discovery mechanisms to determine who falls in or out of the class"). A computer vision search of Prisoner Movement Slip photographs will meaningfully further those efforts and is not duplicative of the planned search, which relies on demonstrably inconsistent documentation.

Nor would using Rekognition or another platform to search Prisoner Movement Slip Photographs unduly burden Defendant. The Rekognition platform is cost-effective, speedy to train and implement, and likely to yield a manageable number of results. Furthermore, the kind of computer vision analysis Plaintiffs propose is vastly less burdensome and time-consuming than the kind of facial recognition the NYPD engages in every day. Whereas the NYPD routinely attempts to match images to a single individual, Plaintiffs seek merely to divide Prisoner Movement Slip photographs into two categories: persons wearing head coverings and persons not wearing head coverings. Plaintiffs have every confidence that a computer vision search will be efficient—even accounting for any human review that might follow—but the search would be necessary even if it were more laborious. "The fact that [a] manual process may be slow and burdensome cannot defeat the ascertainability requirement." *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) (noting that Defendant could use computer database or examine "individual files" to identify class members). And while Defendant attempts to paint Plaintiffs' computer vision proposal as "unprecedented," courts in this District in fact routinely order limited discovery for the purpose of class ascertainment. *See, e.g.*, *Herbst v. Able*, 278 F. Supp. 664, 669 (S.D.N.Y. 1967) (granting motion to engage in discovery to identify class members).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

During the parties' meet and confer and in subsequent letter exchanges, the City separately represented that N.Y. C.P.L. § 160.50[1] would impose a substantial burden on a computer vision search of all Prisoner Movement Slip Photographs, but has refused to confirm whether the NYPD maintains photographs taken of arrestees whose charges were ultimately terminated. If the NYPD has not maintained those photographs and is not in possession of them, then Section 160.50 imposes no burden on the proposed search, and the NYPD should search all Prisoner Movement Slip photographs pursuant to an agreed-upon computer vision search protocol. If the City has maintained Prisoner Movement Slip photographs of persons whose arrest charges were terminated, Plaintiffs must be permitted to conduct computer vision searches of those photographs. The City cannot use Section 160.50 as both a sword and a shield, preserving (rather than destroying) photographs of arrestees whose charges were terminated but barring Plaintiffs from accessing those photographs by claiming that the same provision would unduly burden the search process.

Plaintiffs respectfully request that the Court order Defendant to conduct facial-recognition searches of all Prisoner Movement Slip photographs in its possession, custody, or control, using an agreed-upon computer vision platform and search protocol.

**Defendant's Position**

In an effort to identify the size of the class of people whose religious head coverings were removed during their arrests, plaintiffs seek an order compelling defendant to conduct a search of *all* arrest photographs in its possession using facial recognition software. As plaintiffs acknowledge above, this would require programming the facial recognition software's algorithm to recognize religious head coverings. Plaintiffs' request should be denied as it is entirely duplicative of what the City has already agreed – at ***plaintiffs***' request – to do. Specifically, defendant has already agreed to search the database that contains descriptive information about each arrestee that is entered into the Omniform arrest and complaint reports at the time of their arrests for the purpose of aiding in the identification of potential class members.

At the very outset, in order to seek class certification, plaintiffs are not required to know the size of the class with any finite precision. Plaintiffs need only show that "the class is so numerous that joinder of all members is impractical," *i.e.*, there are more than forty (40) presumptive class members. *See* F.R.C.P. 26(a); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d.Cir. 1995). Indeed, the fact that some class members may have yet to be identified does not frustrate the proposed class's suitability in any way. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d. Cir. 1993). Identification of each and every member of the putative class is simply not the standard for class certification.

Plaintiffs' representation that the NYPD "does not consistently document, in writing, whether arrestees are wearing religious head coverings," is inaccurate. Arresting officers are required to document an arrestee's physical appearance, including a description of

---

[1] Section 160.50(a) states that, where charges have been terminated and a proceeding sealed, "every photograph . . . and all duplicates and copies thereof . . . shall forthwith be . . . either *destroyed or returned* to such person" (emphasis added). This provision does *not* provide that photographs of arrestees whose charges were terminated be sealed. It states, instead, that they must be destroyed or returned to the arrestee,

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

their clothing, at the time of their arrest. As a part of this process, each arresting officer will input the type of head gear worn by each arrestee into the Omniform system – whether it be by selecting the appropriate type of head gear from the available options found in a drop down menu (available options include "turban," for example, and "baseball hat," or "unknown") or, alternatively, by selecting "other" from the head gear drop down menu and manually typing in the type of head gear. Regarding the types of head gear that are typed into the Omniform system by an arresting officer, defendant recognizes, of course, that there is a margin of error with the database search, as is true of *any* search, including the very search using facial recognition software being proposed now by plaintiffs, see *infra*, defendant has agreed to search the Omniform reports using nearly **sixty (60)** search terms to account for different and mistaken spellings of the various religious head-coverings. In an effort to conduct a thorough search of the NYPD's records, plaintiffs were consulted and agreed to the list of these sixty search terms to be applied to the arrest report data.

To justify their duplicative and unnecessarily burdensome request, plaintiffs argue that there are potential class members whose religious head coverings will not be captured by the search of the Omniform arrest documents that *they* have proposed. Plaintiffs cite to only two isolated examples of individuals who plaintiffs claim were wearing religious head coverings at the time of their arrests where their head gear is documented as "unknown" in the arrest documents. Rather than proposing a reasonable search that would capture these individuals, plaintiffs instead use these two limited examples to justify a search of every *single* photograph in the NYPD's possession. This does not justify such an extreme request.

To be clear perfection as it applies to ESI discovery is not the standard. *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 U.S. Dist. LEXIS 81840, at *28 (S.D.N.Y. May 14, 2018 ("Discovery disputes concerning the collection, review and production of ESI 'present special challenges' . . . including the substantial likelihood that the data possessed . . . is voluminous, stored in multiple formats and is duplicative across custodians. Accordingly, judges in this District have instructed that 'the standard [in ESI discovery] is not perfection . . . but whether the search is reasonable and proportional" (internal quotations and citations omitted.))

Plaintiffs' attempt to make this case about potential § 160.50 issues is unavailing because Your Honor need only determine whether the discovery plaintiffs seek is proportional to the needs of this case and the claims in this case as defined by FRCP 26. Here, plaintiffs' request that the NYPD conduct a search of all Prisoner Movement Slips using facial recognition software is not proportional and is completely duplicative of the search that the NYPD has already agreed to undertake.

Moreover, while facial recognition software is often a helpful *investigative* tool for law enforcement,[2] plaintiffs seek to use it in this case for a very different (and unprecedented) purpose, the identification of class members. In such an instance, the minimal to nonexistent benefit that can be derived from the use of facial recognition software is far outweighed by the burden of using this software. For example, a human review of all records identified by the software would have to be conducted to confirm that the individual identified is, in fact, wearing

---

[2] See https://www.nytimes.com/2019/06/09/opinion/facial-recognition-police-new-york-city.html.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 5

a head covering. And of course, there would never be any way for the facial recognition software to determine whether the head covering in question was religious in nature. The added burden of this extra level of review that the use of facial recognition software would entail is likely the reason why defendant is not aware of another situation where facial recognition software has ever been used for purposes of class identification and is an additional reason why it should not be used in this case.

Plaintiffs' request is duplicative and not proportional to the needs of the case as defined in FRCP 26. As such, it should be denied.

\*\*\*

We await the Court's guidance and thank the Court for its attention to this matter.

Respectfully submitted,

/s/
Emma L. Freeman

c. All Counsel of Record (by ECF)