USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/16/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMILLA CLARK and ARWA AZIZ, on Behalf of Themselves and Others Similarly Situated, and TURNING POINT FOR WOMEN AND FAMILIES,

          Plaintiffs,

-against-

CITY OF NEW YORK,

          Defendant.

18 Civ. 2334 (AT) (KHP)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs, Jamilla Clark, Arwa Aziz, and Turning Point for Women and Families, bring this action for damages[1] against Defendant, the City of New York (the "City"), alleging that the New York City Police Department (the "NYPD") policy requiring all arrested individuals to have their photograph taken without a head covering violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, 42 U.S.C. § 1983, and New York law. *See* Compl., ECF No. 1. Plaintiffs move for an order pursuant to Federal Rule of Civil Procedure 23(b)(3), certifying a class consisting of all persons who were required to remove religious head coverings for post-arrest photographs while in NYPD custody. Pl. Mot., ECF No. 130. For the reasons stated below, Plaintiffs' motion is GRANTED.

## BACKGROUND

Interim Order 29 sets forth the NYPD policy (the "Policy") requiring that arrestees remove their religious head coverings for an official booking photograph.[2] New York, N.Y., Interim Ord.

---

[1] Although Plaintiffs initially sought injunctive and declaratory relief, these claims have been settled. ECF No. 153.
[2] The parties' settlement agreement includes a draft revised policy, ECF No. 148-1, scheduled to take effect "within sixty (60) days of the lifting of the state of emergency in New York City," ECF No. 148 at 3. The revised policy allows arrestees to wear their religious head coverings in booking photographs, unless there is reasonable suspicion (1) that the

29 Rev. to Patrol Guides 208-03 and 208-07 (Mar. 2, 2015) ("Interim Order 29"), ECF No. 131-1. If an arrestee indicates a preference to retain their head covering for a mug shot, he or she will be transported to One Police Plaza, where the "arrestee can remove their religious head covering and have their photograph taken in private." *Id.* ¶¶ 1, 2(a). At One Police Plaza, a "member of the service of the same gender [as the arrestee]" must be available to take the photograph. *Id.* ¶ 2(a). Additionally, arrestees who are transported there "will be informed that their arrest processing may be delayed due to operational requirements." *Id.* ¶ 3(a). The resulting booking photographs, which depict arrestees without religious head coverings, are maintained by the NYPD and viewable by others. Clark Decl. ¶ 10, ECF No. 133; Aziz Decl. ¶ 12, ECF No. 132.

I. Named Plaintiffs

On January 9, 2017, Jamilla Clark was arrested for violation of an order of protection. Clark Decl. ¶ 4. Clark informed the arresting officers that, as a practicing Muslim, she could not come into physical contact with men and was required to wear her hijab—a garment worn by many Muslim women that covers the ears, hair, and neck, but leaves the entire face exposed[3]—at all times. *Id.* ¶¶ 2–3, 5. Clark uses a hijab because she believes her faith dictates that no man outside of a woman's immediate family should see her uncovered hair, head, and neck. *Id.* ¶ 3. Clark "covers" every day. *Id.*

Despite Clark's explanation of her religious beliefs, officers at NYPD Central Booking ordered her to take off her hijab for a mug shot. *Id.* ¶ 6. Clark reiterated that she could not remove it in front of men who do not belong to her immediate family because of her Muslim faith. *Id.* Officers informed Clark that she would be criminally prosecuted if she did not take off the hijab, and one supervisor made hostile comments about Muslims. *Id.* ¶ 7. Later, Clark was transported to One

---

arrestee has a relevant distinguishing feature that is not fully visible unless the covering is removed, or (2) that the arrestee committee the crime outside of his or her residence while not wearing a head covering. ECF No. 148-1 at 3–4.

[3] Unlike a hijab, a niqab is a veil that covers the face. Compl. ¶ 16. Neither Clark nor Aziz wears a niqab. *Id.*

2

Police Plaza, where—fearful of criminal charges—she removed her hijab to be photographed in a private room. *Id.* ¶ 8. Clark observed a surveillance camera there, and later another officer showed the picture to approximately five male officers. *Id.*

The removal of Clark's hijab left her "extremely agitated, distraught, and tearful." *Id.* ¶ 9. Clark alleges that "the NYPD still has multiple photographs of [her] without [her] hijab" and that she "continue[s] to experience distress and humiliation when [she] think[s] about unknown men viewing these photographs." *Id.* ¶ 10.

On August 30, 2017, Arwa Aziz voluntarily submitted herself to NYPD custody at the Sixty-Eighth Precinct in Brooklyn, after her sister-in-law obtained an order of protection and requested that the police arrest Aziz for violating the order. Aziz Decl. ¶¶ 4–5. Aziz wears her hijab daily and believes her faith requires as much. *Id.* ¶ 3. After Aziz arrived at the precinct, NYPD officers took her photograph with her hijab on, then drove her to Brooklyn Central Booking to be photographed again. *Id.* ¶ 6. Once there, in a hallway with more than thirty male prisoners, officers demanded that Aziz take off her hijab to be photographed. *Id.* Aziz repeated that, for religious reasons, she could not remove it. *Id.* ¶ 7. The officers informed Aziz that she could have her picture taken privately at One Police Plaza, but warned her a female photographer might not be available, and threatened to "restart" the booking process if she chose to relocate. *Id.* ¶ 8.

Having waited for close to one hour, Aziz asked the officers if she could push her hijab back to reveal her bangs and hairline for the photo. *Id.* ¶ 9. The officers repeated their refusal. *Id.* Again, they ordered Aziz to remove her hijab entirely. *Id.* In tears, Aziz finally complied. *Id.* ¶ 10. For about five minutes, officers photographed Aziz. *Id.*

Aziz believes that "the NYPD still has multiple photographs of [her] without [her] hijab" and she "continue[s] to experience distress and humiliation when [she] think[s] about unknown men viewing these photographs." *Id.* ¶ 12.

3

# DISCUSSION

I. <u>Legal Standards</u>

For a matter to proceed as a class action, a plaintiff must satisfy the following prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to satisfying the Rule 23(a) prerequisites, the plaintiff must qualify the proposed class under one of three Rule 23(b) categories. Fed. R. Civ. P. 23(b); *see also Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Rule 23(b)(3)—the provision under which Plaintiffs move—is appropriate in cases in which common questions of law or fact predominate over individual issues, and where a class action is the superior method of adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

Rule 23 is more than a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The movant must establish each of Rule 23's requirements by a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

II. <u>Analysis</u>

A. Rule 23 Prerequisites

Although it is "not explicitly spelled out in Rule 23, courts in this circuit have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011) (quoting *In re Initial Public Offerings Sec. Litig. (In re IPO)*, 471 F.3d 24, 30 (2d Cir. 2006)). Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id.* at 396 (citing *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be

ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Additionally, courts also address whether a class is overbroad before evaluating a class under Rule 23. *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 397 (S.D.N.Y. 2008) ("[U]ntil a class of persons alleged to be entitled to relief is defined, the [c]ourt cannot conduct the numerosity, commonality, typicality and adequacy analyses that must precede certification.").

Plaintiffs' proposed class includes "all persons who were required to remove their religious head covering for a post-arrest photograph while in custody of the" NYPD. Pl. Mot. ¶ 1; *see* Pl. Mem. at 17, ECF No. 134. The City maintains spreadsheets that identify every individual who would fall into this proposed class between March 16, 2014, and March 16, 2018, Freeman Decl. ¶¶ 10–15, 19–26, ECF No. 131, and has the ability to identify other potential class members outside of this time period, *id*. Thus, because class members can be identified using objective criteria, the class is ascertainable.

The proposed class is not overbroad despite including men and non-Muslims. Although a person's religious beliefs are personal and subjective, the Court will not evaluate the person's interpretation of religious doctrine. *See, e.g.*, *United States v. Lee*, 455 U.S. 252, 257 (1982) ("It is not within 'the judicial function and judicial competence,' . . . to determine whether appellee or the Government has the proper interpretation of the Amish faith; '[c]ourts are not arbiters of scriptural interpretation.'" (quoting *Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 716 (1981) (alterations in original)). Consequently, the Court need not conduct an individual determination regarding "whether each putative class member was wearing their head covering pursuant to a genuinely held religious belief," Def. Mem. at 8, ECF No. 135, that is, whether the individual's religion genuinely mandates them to wear the head covering. Rather, the Court agrees with Plaintiffs that certification of this class is proper because "a core legal question transcends factual distinctions"

and because "all class members suffered the same injury"; what particular religion causes a putative class member to wear the head covering does not affect the legal question of whether having the head covering removed pursuant to the Policy violates their religious beliefs. Pl. Reply at 2–3, ECF No. 145; *M.K.B. v. Eggleston*, No. 05 Civ. 10446, 2006 WL 3230162, at *1 (S.D.N.Y. Nov. 7, 2006) ("Despite the different paths that led them to [Legal Permanent Resident] status, all class members were victims of a 'unitary course of conduct by a single system,' thereby satisfying the commonality, typicality and other relevant requirements[] of Rule 23."). Moreover, Plaintiffs' class definitionally only includes those who were required to remove a religious head covering while in NYPD custody; any class member will *per se* be declaring their belief that their religion mandates their head covering, further obviating the need for the Court to inquire into each individual's religious belief. *DeOtte v. Azar*, 332 F.R.D. 188, 197 (N.D. Tex. 2019) ("Plaintiffs contend the contraceptive mandate violates their sincerely held beliefs, and they have designed the class definitions so any employer or individual who opts in will necessarily have contended the same.").

Consequently, the proposed class is ascertainable and not overbroad.

  B. Rule 23(a) Requirements

    1. Numerosity

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity can be presumed if the class has at least forty members. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Evidence of exact class size or identity of class members is not required to satisfy the numerosity requirement. *Id.* at 935. Rather, a district court must make a factual finding as to the approximate size of the class based on the

evidence presented, and then "apply the legal standard governing numerosity." *See In re IPO*, 471 F.3d at 40.

According to the City's records, Plaintiffs' proposed class includes over 4,400 individuals for a four-year period alone. Freeman Decl. ¶ 26; Def. Mem. at 4 n.4. Defendant does not contest that Plaintiffs' proposed class meets the numerosity requirement, instead arguing that a subset of hijab-wearing women within Plaintiffs' proposed class does not meet the requirement. Def. Mem. at 12–13. Although the City's records could invariably include head coverings misidentified as religious, three categories of presumptively religious head gear—hijabs, turbans, and yarmulkes/kippahs—appear in the City's records over 2,000 times. Callaghan Decl. ¶ 13, ECF No. 136. Plaintiffs, therefore, have adequately established numerosity.

2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must "present evidence that a common factual nexus exists among the purported class." *See Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 232 (S.D.N.Y. 2002). However, the commonality requirement is to be "liberally construed." *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (*quoting Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)); *see also Lewis Tree*, 211 F.R.D. at 231 (noting that "the commonality requirement of Rule 23(a)(2) is usually a minimal burden for a party to shoulder").

The commonality standard does "not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008). Rather, it "require[s] that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Damassia*, 250 F.R.D. at 156 (*quoting Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 153 (S.D.N.Y. 2002)) (alteration omitted). The commonality requirement

7

may be satisfied where plaintiffs' various alleged injuries "derive from a unitary course of conduct by a single system." *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

The Court rejects Defendant's contention that, because the class consists of members of different religions, it must evaluate each arrestee's claim separately to establish liability. Def. Mem. at 14–16. Plaintiffs present one question that is common to all members of the proposed class: whether the Policy violates state and federal constitutions and the Religious Land Use and Institutionalized Persons Act. Pl. Mem. at 1; Compl ¶ 69 (The class consists of individuals "who were (a) arrested by or in the custody of the NYPD; (b) required to take a post-arrest [b]ooking [p]hotograph while in any NYPD facility; and (3) forced to remove any religious head covering for that [b]ooking [p]hotograph pursuant to" the Policy). The Policy compels all individuals to remove religious headwear when sitting for a booking photograph. Interim Order 29. As a result, every member of the class will have the same claim because each member objects, due to their sincerely-held religious beliefs, to some or all of the activity the Policy compels. *See DeOtte*, 332 F.R.D. at 197–99 (certifying a class consisting of individuals with a variety of religions who object to the Affordable Care Act's contraceptive mandate); *Marisol A.*, 126 F.3d at 377.

Plaintiffs, therefore, have adequately established commonality.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As is well-recognized, "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert*

8

*Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). As with commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," as long as the wrong is alleged to have occurred in the same general fashion. *Robidoux*, 987 F.2d at 936–37.

Given the discussion of commonality, above, and the fact that all class members, like the named Plaintiffs, have had to remove their religious head coverings in accordance with the Policy, the class members' alleged injuries derive from a unitary course of conduct. *Abdul-Malik v. Coombe*, No. 96 Civ. 1021, 1996 WL 706914, at *3 (S.D.N.Y. Dec. 6, 1996) (finding that a proposed class met typicality requirements despite variations in the class members' religious practices); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 (S.D.N.Y. 2012) ("Where, as here, the alleged 'injuries derive from a unitary course of conduct by a single system,' typicality is generally found." (quoting *Marisol A.*, 126 F.3d at 377 (2d Cir. 1997))).

Plaintiffs, therefore, have also adequately established typicality.

4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is evaluated in two ways: by looking to the qualifications of the plaintiffs' counsel and by examining the interests of the named plaintiffs. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Defendant does not dispute adequacy of representation. *See* Def. Mem. Nor has the Court identified any basis upon which to question the qualifications and experience of Plaintiffs' counsel. Similarly, the Court cannot identify any conflict of interest between Plaintiffs and other members of the proposed class.

Plaintiffs, therefore, have shown adequacy.

B. Rule 23(b)(3) Requirements

A class action may be maintained if all four Rule 23(a) requirements are met, and the action qualifies under at least one of the subdivisions of Rule 23(b). Plaintiffs assert that certification is appropriate under Rule 23(b)(3). Pl. Mem. at 14. A class action may be certified under Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "The predominance requirement is more demanding than the commonality requirement in Rule 23(a): Plaintiffs must show that the case is subject to generalized proof applicable to the class as a whole." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011) (citation omitted). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated, and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quotation marks and citation omitted). Additionally, the presence of uninjured class members does not preclude a finding of predominance. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 135 (D.D.C. 2017) ("Several district court judges in the Second Circuit also have found Rule 23(b)(3) predominance satisfied despite the presence of uninjured class members at the class certification stage."), *aff'd sub nom. In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619 (D.C. Cir. 2019).

"Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." *Johnson*, 780 F.3d. at

138 (citing *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227 (2d Cir. 2006)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (quotation marks and citation omitted).

Again, the Court rejects Defendant's argument that the Court will have to undertake individualized determinations into each proposed class member's religious beliefs. The proposed class members are unified by a common legal theory and by common facts: they all argue that the Policy is unconstitutional and that each was allegedly subjected to removing their religious headgear in violation of their sincerely-held religious beliefs. Although proposed class members have differing religious beliefs, these minor factual variations do not preclude certification because they do not predominate. *See McBean v. City of New York*, 228 F.R.D. 487, 502–3 (S.D.N.Y. 2005) (certifying a class under Rule 23(b)(3) where all proposed class members were subject to a blanket strip search policy mandating strip searches for every post-arraignment misdemeanor arrestee). Where the field of individual defenses as to liability is considerably limited, as here, predominance of the central legal and factual issues common to all proposed class members is evident. *Id.*

As a final requirement, Plaintiffs must show that a "class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policies [and] the damages suffered are small relative to the expense and burden of individual litigation." *Fonseca v. Dircksen & Talleyrand Inc.*, 13 Civ. 5124, 2015 WL 5813382, at *6 (S.D.N.Y. Sept. 28, 2015).

Defendant does not dispute that a class action would be superior. *See* Def. Mem. Accordingly, the Court concludes that a class action is the most efficient means of resolving these claims.

Plaintiffs, therefore, have met the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to certify class is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 130.

SO ORDERED.

Dated: February 16, 2021
      New York, New York

ANALISA TORRES
United States District Judge