# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMILLA CLARK and ARWA AZIZ, on Behalf
of Themselves and Others Similarly Situated, and
TURNING POINT FOR WOMEN AND
FAMILIES,

               Plaintiffs,

    -against-

CITY OF NEW YORK,

               Defendant.

Case No.: 18-cv-02334 (AT)(KHP)

---

## SETTLEMENT AGREEMENT

THIS CLASS ACTION LAWSUIT SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of the Fourth day of April 2024, by and among Defendant City of New York (the "City" or "Defendant") and Class Counsel (as defined below), on behalf of Plaintiffs (together, the "Parties").

WHEREAS Named Plaintiffs Jamilla Clark and Arwa Aziz ("Class Representatives" or "Named Plaintiffs") filed a Complaint against the City on March 16, 2018, alleging on behalf of themselves and class of people similarly situated (collectively, "Plaintiffs"), *inter alia*, that Defendant City of New York violated their federal, state, and constitutional rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), the First Amendment, and the New York State Constitution by requiring that New York City Police Department ("NYPD") arrestees remove any religious head covering for a booking photo (the "Action");

WHEREAS the NYPD changed its policy allowing all arrestees to retain their religious head covering unless they fall within limited exceptions;

1

WHEREAS, by Opinion and Order dated February 16, 2021, the Court granted Plaintiffs' motion to certify a class consisting of all persons who were required to remove religious head coverings for post-arrest photographs while in NYPD custody;

WHEREAS the Class Period includes arrests that occurred between March 16, 2014 and August 23, 2021;

WHEREAS, Class Counsel thoroughly analyzed and evaluated the merits of the claims made against Defendant in the Complaint, and based on their analysis and evaluation of a number of factors, including the substantial risks of litigation, and in light of the delay attendant to litigation, Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs and the Class Members;

WHEREAS Defendant denies all the allegations made in the Complaint;

WHEREAS the Parties now desire to enter into an agreement to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability;

WHEREAS the terms of Agreement were extensively and vigorously negotiated in good faith with the assistance of the Court over several years;

WHEREAS the negotiations have resulted in this Agreement, which, subject to the approval of the Court, settles this Action in the manner and upon the terms set forth below; and

WHEREAS the signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Class Members to the terms and conditions hereof, subject to Court approval.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

**INTRODUCTION**

1.      The Parties consider this Agreement to be fair, reasonable, and adequate.

2.      Defendant denies any and all liability and denies that it or its agencies had or have a policy, or engaged in or currently engage in, a pattern or practice that deprived persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the State of New York or by statute.

3.      This Agreement does not, and shall not be deemed to, constitute an admission by Defendant as to the validity or accuracy of any of the allegations, assertions, or claims made by Plaintiffs. This Agreement does not constitute an admission, adjudication, or finding on the merits of this Action.

4.      This Agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this Agreement.

5.      Class Counsel has extensively investigated and litigated the claims asserted in this Action and—taking account of the contested issues involved, the expense and time necessary to prosecute the Action through trial, the risks and costs associated with further prosecution of the Action, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to this Agreement—Plaintiffs Jamilla Clark and Arwa Aziz are sufficiently informed and satisfied that the terms of this Agreement are an appropriate and fair resolution of the Class Members' claims.

**DEFINITIONS**

6.      The capitalized terms below shall have the meanings defined in this Section wherever used in this Agreement. Capitalized terms defined in other Sections of this Agreement

shall have the meanings whenever used in this Agreement. Capitalized terms are for the purposes of this Agreement only.

7. "Administrator" means the Claims Administrator chosen by Class Counsel and appointed by the Court to administer the Qualified Settlement Fund, disseminate the Claim Packets and provide notice, and review and determine the validity and amount of claims submitted by Class Members. As used in this Agreement, the term "Administrator" shall encompass any other entities that the Administrator or Class Counsel contract with to assist in providing notice to the Class, as approved by the Court in the Notice/Administration Plan.

8. "Administrative Costs" will be those costs incurred to locate and provide notice to Class Members, including costs of the Administrator and third parties that may facilitate locating and notifying Class Members, as well as those costs to administer the settlement.

9. "Action" means *Clark, et al. v. City of New York*, No. 18 Civ. 02334 (S.D.N.Y. 2018).

10. "Claim Form" means the form that Class Members must complete and submit to receive payment from this Settlement, to be submitted to the Court with the motion for Preliminary Approval.

11. A "Claim Packet" means a Claim Form, together with the notice to be mailed to Class Members in a form approved by the Court. The Claim Packet will be mailed by the Administrator to everyone on the Class List for whom an address is identified.

12. "Claimant" means a Class Member who submits an executed claim that is timely (including late claims accepted pursuant to Paragraph 64), complete, and accurate.

13. "Claimant Total" means the total amount of funds to be paid to Claimants.

14.  "Class Counsel" means Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the Surveillance Technology Oversight Project.

15.  "Class Fund" means the amount of seventeen million, five hundred thousand dollars ($17,500,000) to be paid by the City for all Class Member claims, the service award to the Class Representative, Administrative Costs, and Class Counsel's own past, present, and future fees and costs.  The Class Fund is subject to increase in the event the return rate is higher than 40% as set forth below in paragraph 48 and is subject to reversion to the City of New York in the event the return rate is lower than 20% as set forth below in paragraph 48.

16.  "Class List" is the agreed-upon spreadsheet of Class Members.

17.  "Class Member" means any individual who had a religious head covering removed for an official NYPD booking photo within the Class Period, who does not file a valid and timely Opt Out within the time frame provided in paragraph 27 of this Agreement. Any individual who appears on the Class List is presumptively a Class Member.

18.  "Class Period" means the time between March 16, 2014, and August 23, 2021.

19.  "City" means the City of New York.

20.  "Counsel for Defendant" or "Defendant's Counsel" means the New York City Law Department, Office of the Corporation Counsel.

21.  "Confidential Information" means Class Members' dates of birth, social security numbers, immigration-related identifying numbers, phone numbers, address information, email addresses, and any other contact or personally identifying information, including any aggregated data collected by the Administrator for the purposes of providing notice, and any updates to such data through aggregation, address research, or additional information collected by Class Counsel or third-parties.

22.     "Court" means the Southern District of New York, Hon. Analisa Torres.

23.     "Distribution Amount" will be the amount of thirteen million, one hundred and twenty-five thousand dollars ($13,125,000) and is equal to the amount of the Class Fund after the deduction of the Settlement Costs, which is the total amount available to distribute to Class Members who file claims. The Distribution Amount is subject to increase in the event the return rate is higher than 40% as set forth below in paragraph 48 and is subject to reversion to the City of New York in the event the return rate is lower than 20% as set forth below in paragraph 48.

24.     "Effective Date for Payment" or "Effective Date" is the date on which the City must deposit the Distribution Amount with the Administrator. The effective date for payment is 60 days following the entry of the Court's Final Approval Order.

25.     "Eligible Class Member" means any Class Member who submits a Claim form in compliance with this Stipulation.

26.     "Final Approval Hearing" or "Fairness Hearing" means the hearing to be scheduled by the Court to determine, among other things, whether the Court should approve the proposed Agreement as fair, reasonable, and adequate.

27.     "Final Approval Order" means an Order by the Court, after a fairness hearing, granting Final Approval to this Agreement, approving Class Counsel's fees and costs, approving such Administrative costs that have not been previously approved, approving a Service Award Payment, and dismissing the Action with prejudice.

28.     The "Final Objection Deadline" shall mean one hundred and twenty (120) days from the Notice Date.

29.     The "Final Opt-Out Deadline" shall mean one hundred and twenty (120) days from the Notice Date.

30.     The "Final Claim Form Deadline" shall mean one hundred and twenty days (120) from the Notice Date.

31.     "Incident," shall mean a specific arrest or processing of an arrest. A Class Member is entitled to compensation for each Incident they experienced up to a maximum of five Incidents.

32.     The "Notice Date" shall mean 30 days from the Preliminary Approval Date, or some other date determined by the Court.

33.     "Notice/Administration Plan" is the plan for providing direct, publication, and other types of notice to potential Class Members along with the plan for administering the settlement.

34.     "NYPD" means the New York City Police Department.

35.     "Opt-Out" or "Request for Exclusion" is any potential Class Member who files a timely written request to be excluded from the Class.

36.     "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

37.     "Preliminary Approval Order" means the Order entered by the Court preliminarily approving this Agreement, scheduling a Fairness Hearing, approving a plan of notice to the Class, and appointing the Administrator.

38.     "Qualified Settlement Fund" ("QSF") means a bank account to be established by the Administrator for the benefit of the Settlement Class. The QSF shall be interest bearing if the costs associated with making it interest bearing (such as tax preparation and bank fees) are less than the likely interest earned. If the QSF is an interest-bearing account, any amount remaining after the costs described in this paragraph will be subject to the conditions of paragraph 65 herein.

39.     "Released Claims" shall mean any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity, or arbitration), and any and

all allegations of liability or damages, of whatever kind, nature, or description, direct or indirect, in law, equity, or arbitration, absolute or contingent, whether class or individual in nature, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or the Settlement Class and/or any Class Member in connection with or related to this action), that were or could have been asserted by the Class Representatives against the Released Parties based upon or arising out of the removal of religious head coverings for official NYPD booking photographs.

40.    "Released Parties" means the City, its predecessors, successors and assigns, together with all past and present officials, employees, representatives, and agents of the City of New York, or any agency thereof, and any person or entity represented by the Office of the New York City Corporation Counsel, and, in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privities, and insurers.

41.    "Settlement Costs" means $4,375,000 from the Class Fund that shall be used for the Administrative Costs, service awards to the Class Representatives and certain Class Members deposed as part of absent class discovery and Class Counsel's attorneys' fees and costs as approved by the Court.

42.    "Summary Notice" means a one-page English and a one-page Arabic, Bengali, Punjabi, Spanish, Urdu, Hebrew, and other relevant language-summary of this Agreement in a form approved by the Court.  The Summary Notice will summarize the terms and conditions of this Stipulation and will notify such Class Member (a) that in order to be eligible to receive a Final Individual Payment Amount, he or she must timely submit a Claim Form and (b) that any payment made hereunder is subject to reduction for any outstanding New York child support and docketed parking judgments owed to DOF.  The Summary Notice shall contain

instructions about how any of the aforementioned document(s) may be submitted to the Administrator.

**CLASS DEFINITION**

43.     The "Settlement Class" means any Class Member who was required to remove a religious head covering for an official NYPD booking photo during the Class Period. Any individual who appears on the Class List is presumptively part of the Settlement Class.

44.     Excluded from the Class are:

> (a) individuals who have settled all claims with the New York City Comptroller's Office stemming from the removal of a religious head covering during the NYPD's arrest processing procedure; and

> (b) individuals whose claims are otherwise barred by the terms of a valid and enforceable release with the City.

**PRELIMINARY APPROVAL**

45.     Class Counsel will move for Preliminary Approval of this Agreement and its motion will include a proposed notice, a proposed Preliminary Approval Order, and a proposed Claim Form. The Preliminary Approval Motion will also seek the setting of a Fairness Hearing for Final Approval of the settlement at the earliest practicable date. Defendants will not oppose Plaintiffs' motion so long as it conforms to the terms of this Agreement.

46.     No steps shall be taken towards administration prior to obtaining a Preliminary Approval Order.

**SETTLEMENT FUND AND DISTRIBUTION**

47.     The Distribution Amount will be divided based on the response rate of the Claimants as set forth in the following paragraph.

48.     When all timely claims have been processed, the Distribution Amount will be allocated based on the number of Claimants such that every Claimant receives the same amount. This will be determined as follows: (1) if the percentage of Incidents for which Class Members submit claim forms is 20% or greater, up to and including 40%, then the Distribution Amount shall be divided equally amongst all Claimants; (2)  if the percentage of Incidents for which Class Members submit Claim Forms is greater than 40%, the City shall supplement the Class Fund and the Distribution Amount such that each Claimant receives $7,824.00; and (3) if the percentage of Incidents for which Class Members submit Claim Forms is less than 20%, then all Claimants shall receive $13,125.00 and the remaining amount in the Class Fund shall be returned to the City.

49.     Any Class Members whose religious head coverings were removed for an official NYPD booking photographs on more than once occasion during the Class Period is entitled to payment for each instance.

## NOTICE PLAN

50.     Class Counsel will be responsible for developing a plan for robust class member location and notice procedures and retaining the Administrator(s) needed to execute the plan ("Notice/Administration Plan.") The Notice/Administration Plan may include services to Class Members that are intended to facilitate their notification and participation in the Settlement.

51.     Along with the motion for Final Approval, pursuant to a schedule to be set by the Court, Class Counsel shall file or cause to be filed with the Court a declaration from the Administrator confirming that notice was provided consistent with this Agreement and the Notice/Administration Plan.

52.     Nothing in this section shall limit further appropriate efforts to provide notice.

## ADMINISTRATOR

53.     Class Counsel will be responsible for developing the duties for the Administrator and retaining the Administrator who will administer the Class Action settlement. The Administrator's duties may include locating and issuing notice to Class Members, distributing, receiving and validating claim forms, determining eligibility for awards to Class Members, calculating Class Member awards, issuing and mailing awards to Class Members, collecting objections and exclusion requests, responding to inquiries from Class Members, and other tasks.

### *Data*

54.     The Parties agree to facilitate the work of the Administrator by, among other things, obtaining and providing to the Administrator information, data, documents, and records in the NYPD's or defense counsel's possession, which are relevant and appropriate to facilitate the administration of the QSF.

55.     Within two weeks of the Preliminary Approval Order, the Parties will provide the Administrator with an Excel spreadsheet, containing a list of all Class Members and other relevant information known to the Parties to facilitate administration of this Stipulation.

56.      The City shall provide the Administrator with, where available, any additional mailing or email address data for Class Members from databases maintained by the New York City Police Department.  The City shall provide this information to the Administrator no later than two weeks after Preliminary Court Approval.

### *Confidentiality*

57.     Class Member Confidential Information shall be treated as confidential and shall not be disclosed to anyone except Class Counsel (including outside consultants and contractors), Defendant's Counsel, the Administrator, or the Court under seal, with the exceptions

of sharing with (a) public defender organizations as necessary for the purposes of locating and notifying Class Members that are or have been clients of those public defender organizations (and limited to name and NYSID); (b) City personnel as necessary for the purposes of identifying individuals with open child support liens and individuals with docketed parking judgments owned to the Department of Finance. The City may also use Confidential Information only if Class Members will be receiving award amounts over $10,000 to notify the New York State Office of Victim Services ("OVS") of the prospective payments, so that the New York State Office of Victim Services may determine if it will seek any remedy pursuant to N.Y. Exec. Law §632-a, limited to the City providing OVS the name, date of birth, and the last four digits of the social security number. The City may also use Confidential Information to report payments to be made pursuant to this Stipulation as required by law to any state or federal tax authority or to the United States for the purposes of Medicare lien enforcement, as required by law.

58.     To the extent any Party or the Administrator seeks to disclose Confidential Information received from the Administrator to any other person or entity, they must first seek the Parties' consent in writing (which shall not be unreasonably withheld), have the recipient sign the confidentiality agreement, and the disclosure sought shall be for the purposes of providing more effective notice to Class Members. No Party shall use Confidential Information for any other purpose other than in this litigation and for the administration of this Agreement.

59.     Nothing herein shall limit Class Counsel or the Administrator's ability to disclose data about a Class Member to that Class Member or their counsel. Nothing herein shall limit the City's ability to use data and information about Class Members it possesses separate from the administration of this Agreement, and nothing herein shall require the City to destroy such data/information.

60.     The Administrator and the City shall make reasonable efforts to delete all Confidential Information they obtain no later than thirty (30) days after the Effective Date for Payment and provide written confirmation of data destruction to Class Counsel within ten (10) days of such destruction. Nothing in this Agreement will require the City to delete data it already possesses, independently of the settlement of this action, except that the City shall delete all photographs of Class Members whose criminal cases were dismissed.

### *QSF*

61.     The Administrator will apply for a tax ID number, if necessary, and take all necessary steps for the timely creation of the QSF prior to the fourteenth (14th) day from the Final Court Approval.

62.     The Administrator shall provide the City the Employer Identification Number for the QSF, and a completed W-9 Form and bank routing information for the trust fund account, within twenty-one (21) days of the Final Court Approval.

63.     The Administrator will treat income taxes as the first priority for payment, and therefore, shall, on a quarterly basis, set aside an amount sufficient to pay all income taxes, if any, owed by the QSF on interest earned to date. The Administrator shall pay all income taxes, if any, on a quarterly basis. The Administrator will provide Class Counsel, Defendant's Counsel, and the City Comptroller a monthly statement of expenses paid. The City Comptroller's Office shall have the right to inspect and copy all tax forms (and worksheets), and monthly bank statements of the QSF. Neither the City nor Class Counsel nor the Class Representatives will be responsible for taxes, penalties, or interest incurred on the QSF. The Administrator shall issue all required IRS forms.

*Liens and government benefits*

64.     The City shall not assert with respect to a payment pursuant to this Stipulation any liens against the payment to Class Members except, where relevant, child support liens and docketed parking judgments owed to DOF.  In no event shall DOF seek to reduce a Class Members' settlement payments based on any lien other than docketed parking judgments and, in that situation, DOF will not seek to reduce the Class Members' settlement payments by more than $500 in docketed parking judgment debt.

65.     The City, Class Counsel, and the Administrator will comply with any provisional remedies obtained by the New York State Office of Victim Services, as authorized by N.Y. Exec. Law §632-a, including but not limited to attachment, injunction, receivership, and notice of pendency with respect to any payment over $10,000 made hereunder.  Class Members will be paid ten percent of the settlement award which shall be exempt from enforcement in accordance with N.Y. Exec. Law § 632-a(3).  The City will not otherwise seek to reduce the payments by exercising its right to recover any other amounts. These provisions apply only to the proceeds received by Class Members under this Stipulation, and nothing herein shall be construed as a waiver to seek or collect all remaining balances due and owing from any source other than the proceeds paid pursuant to this Stipulation.

66.     Within three days after Final District Court Approval is granted, the Administrator shall provide the City and Class Counsel with a list of all Eligible Class Members, including any address, date of birth, and/or social security number provided by the Class Members, so that the City may determine whether each person's award must be reduced due to New York child support liens or docketed parking judgments owed to DOF. The City may also use the information provided by the Administrator to notify the New York State Office of Victim Services of the prospective

payments to Class Members only if Class Members will be receiving award amounts over $10,000, so that the New York State Office of Victim Services may determine if it will seek any remedy pursuant to N.Y. Exec. Law §632-a. On or before thirty (30) days following the Effective Date for Payment, the City shall provide the Administrator and Class Counsel with a list of those persons who have New York child support liens or docketed parking judgments owed to DOF and the amount that shall be deducted from each such person's payment (and, with respect to child support liens, forwarded to the beneficiary of such child support lien).

67.     Promptly after Final District Court Approval is granted, the City and Class Counsel shall work together in good faith to calculate each Class Member's net individual payment amount by reducing each Class Member's gross individual payment amount by the amount of any deducted liens. The City and Class Counsel shall use this information to jointly generate the Final Class List, which shall show each Class Member's net individual payment amount. To the extent that the City and Class Counsel may disagree about any such calculations, any such disagreement(s) shall be presented to the assigned District Judge for resolution.

**ADMINISTRATIVE COSTS**

68.     Within fourteen days after Preliminary Approval is granted, the City agrees to place $2,187,500 of the Class Fund into a designated Escrow Account (the "Escrow Account") for the purposes of payment of the Settlement Costs, which includes expenses associated with the claims administration process, including without limitation the Administrator's fees, all costs associated with the notice process, and all costs associated with the payment process.

69.     Within thirty days after Final Approval Order, the remaining 50 percent or $2,187,500 will be deposited into the Escrow Account.

70.     Other than the amounts set forth in paragraphs 68 and 69, no additional funds will be added at any time to the Escrow Account for any additional payment of Settlement Costs and/or attorneys' fees and expenses.

71.     The Administrator shall be Rust.  The Parties and the Counsel for the City of New York shall ensure that the Administrator complies with all terms of the Stipulation.

72.     The Administrator shall submit invoices for its services, costs, and expenses on a monthly basis to the City and to Class Counsel, and Class Counsel will pay such bills out of the money placed in an Escrow Account provided Class Counsel does not object to the bill within forty-five (45) days of the receipt of the monthly bill.  The Administrator's duties shall be to: (1) transmit the Notice and Claim Forms to Class Members by means set forth herein and as approved by the Court; (2) establish the Class Website, and a toll-free phone number where information about the settlement will be available to Class Members and where Class Members can ask, and receive responses to, questions; (3) publish the Notice by means set forth herein and as approved by the Court; (4) respond to questions from Class Members; (5) review and assess the validity of information in the Claims Forms submitted by Class Members; (6) verify the identity of Class Members by reviewing their identification; (7) arrange for and distribute checks containing payments to Class Members as set forth in this Stipulation; (8) create a database of Class Members who have filed timely and valid Claim Forms; (9) create a database of Opt Outs; and (10) perform any other duties necessary to fulfill the foregoing responsibilities and any other responsibilities set forth in this Stipulation at the discretion of Class Counsel.

73. The Administrator shall adhere as closely to the plan and costs set forth in the proposal attached hereto as Appendix A, barring unforeseen or unavoidable cost increases or other necessary changes that may arise in administering the Class or as required by the Court.

## ATTORNEYS' FEES AND COSTS

74.     At or about the time of the motion for Final Approval without objection from the City, Class Counsel will seek Court approval for attorneys' fees and expenses in the amount remaining after administrative costs and incentive awards are deducted from the Settlement Costs, which are $4,375,000. The Parties hereby agree not to appeal or challenge the Court's award of attorneys' fees and expenses.  Should the Court award Class Counsel attorneys' fees in an amount that is less than the amount remaining in the Escrow Account, any remaining amount will be added to the Distribution Amount.

75.     If after the issuance of Preliminary Approval Order, this Agreement is not ultimately approved by the Court, the remaining funds in the Escrow Account will be returned to the City.

## SERVICE AWARD PAYMENTS

76.     Subject to the Court's approval, each of the Named Plaintiffs Jamilla Clark and Arwa Aziz shall be entitled to an incentive payment of $35,000 and each of the Class Members who were deposed, with the exception of Vanessa Mohammed who is entitled to $3,500, as part of absent class discovery shall be entitled to incentive payments of $7,000. These payments are for the services provided to the Class for any inconvenience, pain, suffering, and other non-pecuniary loss experienced as a result. These service award payments are in addition to any amounts otherwise due to the Named Plaintiffs and deposed Class Members with respect to their individual claims as Class Members. The Service Award Payments shall be paid directly to the Named Plaintiffs and deposed Class Members together with their distribution from the Distribution Amount.

## IDENTIFICATION REQUIREMENT

77.     A Class Member may establish his or her identity by providing the Administrator with his or her Social Security or Tax Identification number and date of birth on the claim form.

78.     In the event that it is later determined that the name and social security number of the claimant does not match the records of the Internal Revenue Service, the Administrator shall withhold twenty-eight (28%) of the amount paid to that claimant and will distribute those funds to the federal government.

## ADMINISTRATIVE COSTS

79.     If after the issuance of the Preliminary Approval Order, this Agreement is not ultimately approved by the Court, the City will be responsible for all Administrative Costs incurred prior to such point, though to the extent the Administrator possesses any unspent Administrative Costs, they shall be returned to the City.

## CLAIMS PROCESS

80.     Within two weeks of Preliminary Approval Order, the parties shall furnish to the Administrator the Last Known Contact List of all individuals identified in the Class List.

81.     The Administrator shall update the Last Known Contact List from time to time when new information about a Class Member's Last Known Contact is obtained from any reliable source.

82.     Promptly after Preliminary Court Approval, the Administrator shall generate drafts of the Summary Notice that will be mailed to each Class Member.  The Summary Notice will summarize the terms and conditions of this Stipulation and will notify such Class Member (a) that in order to be eligible to receive a payment from the Class Fund, he or she must timely submit a Claim Form and establish his identity pursuant to paragraphs 77-78 and 86-88 herein;

and (b) that any payment made hereunder is subject to reduction for any outstanding New York child support and docketed parking judgments owed to DOF.

83.     On or before the Notice Date, the Administrator shall cause the Notice Form for each such Class Member, the Claim Form, and the Opt Out Form to be mailed to such Class Member at their last known address.

84.     The Administrator shall provide to Counsel for the Parties, at least ten (10) days prior to the Final Fairness Hearing, a list of Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

## SUBMISSION AND REVIEW OF CLAIM FORMS

85.     The Administrator shall provide the parties with bi-weekly updates regarding the number and identity of Class Members who have provided updated Last Known Addresses, whose Notice Forms were returned as undeliverable, who have submitted Opt Out Forms, and/ or who have submitted Claim Forms.

86.     All Class Members seeking payment pursuant to the settlement must make such a claim in writing using the Claim Form in the form as may be approved by the Court.  All Claim Forms must be signed by the Claimant.  A Claim Form is deemed submitted upon deposit in a postpaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, when submitted for delivery by a commercial express carrier, when emailed to the Administrator, or when actually received by the Administrator, whichever date is earlier. The Administrator will also make the Claim Form available on the settlement website. Class Members can submit claims either by returning the hard copy Claim Form in the envelope with pre-paid postage provided to them, or by submitting a claim online through the settlement website.

87.     In order for a Claim Form to be considered complete, all questions must be answered, and all applicable blanks filled in in a manner legible to the Administrator.  Failure to file a timely and complete Claim Form by the deadline for submission of all Claim Forms, if not corrected within the remedial period set forth in paragraph 93 below, shall bar the Class Member from receiving payment.

88.     Where a Class Member is deceased, a duly appointed legal representative may submit a claim. Legal representatives must provide proof of the person's death and appropriate documentation that they have been properly appointed a representative of the member's estate to sign and submit a claim.

89.     Class Members may file a Claim Form and are entitled to payment for each incident of forced removal of a religious head covering for a booking photograph during the Class Period.

90.     Class Members who file a Claim Form must notify the Administrator of any change of address.  The Administrator shall be available through a website and a toll-free phone line to respond to requests from Class Members for assistance in completing and filing Claim Forms.

91.     The Administrator shall accept untimely claims that are received by the Administrator within one (1) month of the Effective Date of Payment if a Class Member can establish good cause for submitting an untimely Claim Form. Good cause for submitting an untimely Claim Form shall include, without limitation, the illness or death of a Class Member or member of Class Member's family, the incarceration or detention of a Class Member, or the failure to receive a notice packet, mailing or technical issues generally, including without limitation undelivered claim forms, technical difficulties or problems with uploading the claim, problems with tickler or reminder systems and translation issues.  The Administrator shall determine whether

a Class Member has established good cause, including asking a claimant for the basis for the untimely claim. The Administrator shall apply a permissive standard for that determination.

92.     The Administrator's determination that a Class Member has established good cause is final and non-reviewable. If the Administrator makes an initial determination that a Class Member has not established good cause, the Administrator shall consult with the Parties before reaching a final determination; the affected Class Member shall have the right to ask the Court to review *de novo* the Administrator's denial of an untimely claim.  The Administrator shall provide the Parties a list of those Class Members whose untimely claims are accepted so that the City may determine (within no more than sixty (60) days) whether that person's Award Amount will need to be reduced due to New York child support liens (under the terms of paragraphs 64-67) or DOF docketed parking judgment debt if such judgments are asserted (under the terms of paragraph 64-67). The Administrator shall pay valid untimely claims on a monthly basis, but the Administrator shall not issue payment to an untimely Claimant before the expiration of the 60 days from the Administrator providing notice to the City of such accepted untimely claim in order to allow the City to assert, if appropriate, its rights under paragraphs 64-67.

93.     The Administrator shall conduct a review of all Claim Forms to determine whether the Claim Form is completed and has been timely submitted.  In the event that a Claim Form is timely, but is incomplete, the Administrator shall provide a one-time thirty (30) calendar day remedial period in which a Claimant can rectify any errors in the Claim Form.

94.     The Administrator shall also conduct a review of each claim submitted, as well as data provided by the City, in order to determine the eligibility of the claim for payment.  If the Administrator rejects a claim as not meeting the terms or provisions of the Stipulation, the

Administrator shall so notify the Claimant, Class Counsel, and Defense Counsel, in writing and specify the eligibility and/or entitlement criteria that the Claimant failed to satisfy.

95.    Within ten (10) days of receiving a Claim Form from a Class Member that is not accompanied by a Social Security or Tax Identification number, the Administrator shall contact such Class Member and endeavor to obtain this information.

96.    Promptly after the Claim Form Deadline, the Administrator shall inform the Parties which Class Member submitted Claim Forms prior to the Claim Form Deadline.

97.    The Administrator shall provide to Class Counsel and Defense Counsel, at least ten (10) days prior to the Final Fairness Hearing, a list of Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

98.    The Administrator shall provide Class Counsel and Defense Counsel, at least five (5) days before the Fairness Hearing, a sworn declaration by a person with knowledge declaring under penalty of perjury that the Administrator has complied with all of the terms, conditions, and procedures set forth above, and which informs the Court of the total number of or percentage of objectors and the total number of challengers.

99.    The Claims Administrator shall, within 30 days after the Final Claim Form Deadline complete its review and issue a final determination as to which Class Members are entitled to receive payment pursuant to the settlement.

## EXCLUSION FROM THE SETTLEMENT CLASS

100.    Any potential Class Member who wishes to be excluded from the Settlement Class must mail a request to be excluded from the Settlement Class ("Request for Exclusion") to the Administrator. Any Request for Exclusion must be in writing, state the name, date of birth, and address of the person requesting exclusion, contain a clear statement communicating that such person elects to be excluded from the Settlement Class, and be signed by the Class Member.

22

Originals of all Requests for Exclusion shall be retained by the Administrator until such originals are filed with the Court with dates, addresses, and social security numbers redacted. Named Plaintiffs Jamilla Clark and Arwa Aziz will not request exclusion pursuant to this paragraph. A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Administrator, shall be provided to Class Counsel and Defendant's Counsel.

101.    All Requests for Exclusion must be received by the Administrator on or before the Final Opt Out Deadline.

102.    Any Class Member who does not timely file a Request for Exclusion shall be bound by this Agreement and by all subsequent proceedings, orders, and judgments herein.

## OBJECTIONS AND EXCLUSIONS

103.    Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the proposed Settlement may do so by filing an objection as set out in the notice to be filed along with motion for Preliminary Approval and described below. However, a potential Class Member who requests exclusion from the Settlement Class may not file an objection regarding the terms of the Agreement.

104.    A Class Member who wishes to object must submit to the Administrator at the address provided in the notice their objection(s), as well as the specific reason(s), if any, for each such objection and whether the Class Member wishes to speak at the Fairness Hearing. The objection must state whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection. The Administrator shall promptly send a copy of each objection it receives to Class Counsel and Defendant's Counsel by email.

105.     A Class Member's objection must include the name and docket number of this Action and must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature of the Class Member.

106.     Any Objections by any Class Member must be received by the Administrator on or before the Final Objection Deadline.

107.     A Class Member may object on their own, or through counsel hired at their own expense.

108.     Any attorney hired by a Class Member for the purpose of objecting to the proposed Settlement must serve a notice of appearance on Class Counsel and Counsel for Defendant and e-file the notice of appearance using the Court's ECF system. The notice of appearance must be received by Counsel and filed with the Court no later than thirty (30) days before the Fairness Hearing.

109.     Any Class Member who does not make an objection in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights they may have to object and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement unless otherwise allowed by the Court.

## CLASS CLAIMS BY THOSE NOT ON THE CLASS LIST

110.     A person not on the Amended Class List may submit a claim by providing the Administrator (either directly or with the assistance of Class Counsel) with his or her name; his or her NYSID number, if known; his or her social security number, if known; his or her date of birth; and a reasonable approximation of the date of the arrest(s) where they allege that their head covering was removed that they claim should be included in the Class definition.

111.    Promptly after a claim is submitted to the Administrator, the Administrator shall inform the Corporation Counsel and Class Counsel of the claim and the information that was provided.  The Corporation Counsel and Class Counsel shall then work together in good faith to determine whether the claim has merit.  The Corporation Counsel shall provide Class Counsel with the information necessary to determine whether the claim is valid within twenty (20) business days, and the Parties shall meet and confer within ten (10) business days thereafter.  If the Corporation Counsel and Class Counsel agree that the claim has merit, then any changes that are warranted shall be reflected on an Amended Class List, the Parties shall so inform the Administrator, and the Administrator shall so inform the person who made the claim by first class mail (which mailing shall include the Notice Form, the Claim Form, the Opt Out Form, and a Substitute W-9 Form.)  If the Parties agree that the claim does not have merit, then the Parties shall inform the Administrator that the claim has been rejected, and the Administrator shall so inform the person who made the claim.  If the parties disagree about whether the claim has merit, then the Corporation Counsel may request a signed affidavit from the claimant wherein they affirm that their religious head covering was removed on a date certain within the class period.   If the parties still disagree about whether the claim has merit, the claim shall promptly be submitted to the assigned District Judge for a determination.

## APPEARANCE AT THE FAIRNESS HEARING

112.    Class Member attendance at the Fairness Hearing is not necessary. However, any Class Member who submits a timely written objection to the Administrator in accordance with the requirements set out in this Agreement may appear at the Fairness Hearing either in person or through personal counsel retained at the Class Member's own expense.

113.    Class Members who intend to appear at the Fairness Hearing on their own behalf must send a letter to the Administrator notifying the Administrator of their intention to appear at the Fairness Hearing. Such letter must also include the following information about the Class Member: (a) name; (b) address; (c) telephone number; (d) email address, if available; and (e) signature of the Class Member. The Administrator shall promptly send a copy of each letter it receives to Class Counsel and Counsel for Defendant by email.

114.    The letter referenced in paragraph 113 above, must be received by the Administrator on or before the Final Claim Form Deadline.

115.    If a Class Member retains personal counsel (at the Class Member's expense) to appear on their behalf at the Fairness Hearing, such counsel shall serve on Class Counsel and Counsel for Defendant and e-file using the Court's ECF system a notice of intention to appear, which must be received by Counsel and the Court no later than thirty (30) days before the Fairness Hearing.

116.    Any Class Member who does not submit a letter to the Administrator or whose personal counsel does not file a notice of intention to appear with the Court in the time and manner provided in this Agreement shall be deemed to have waived and forfeited any and all rights they may have to appear at the Fairness Hearing and shall be foreclosed from appearing at the Fairness Hearing unless otherwise allowed by the Court.

117.    Any Class Member who submits an objection to the proposed Settlement shall be deemed to consent to the exclusive jurisdiction of the Court with respect to such objection and all issues that arise or relate to such objection, including any order issued or findings made by the Court regarding the objection.

118.    At the time Plaintiffs submit their motion seeking Final Approval of the Settlement, they shall also submit to the Court all of the timely requests for exclusion, objections, and Class Member letters indicating an intention to appear personally at the Fairness Hearing that have been timely submitted to the Administrator.

119.    Counsel for the Parties shall promptly inform each other of any submission served on them (or that otherwise comes into their possession).

**RELEASES**

120.    Upon the Effective Date of Payment, in consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Representatives and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge the Released Parties (as defined above) from each and every Released Claim, (as defined above) and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties. Unless a Class Member Opts Out of the Settlement pursuant to paragraphs 100-102 above, this release shall apply whether or not such Class Member has executed and delivered a Claim Form or otherwise actively participated in the Settlement. A proposed stipulation of dismissal with prejudice will be filed along with motion for Preliminary Approval.

121.    The Parties and Class Members acknowledge that the covenants and promises made by the City herein constitute adequate consideration in exchange for the releases in paragraphs 84-85.

122.    Nothing in this Agreement shall be construed to bar any claims of the Class Representative or Class Members based on or arising out of events occurring outside of the Class Period.

## MUTUAL FULL COOPERATION

123.    The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Agreement and exercise good faith efforts to accomplish the terms and conditions of this Agreement.

124.    The Parties hereby agree not to appeal or challenge any aspect of this Agreement, to otherwise collaterally attack or challenge this Agreement, or to appeal or challenge any aspect of the Final Approval Order, including attorneys' fees and expenses.

125.    The Parties will take all necessary and appropriate steps to obtain approval of the Agreement and dismissal of the action with prejudice. If the Southern District of New York approves this Agreement, and if there is an appeal from such decision by a non-party, Defendant will join Class Counsel in defense of this Agreement on any such appeal or subsequent proceeding.

126.    Class Counsel will move for Preliminary Approval and Final Approval.

127.    The Parties shall propose to the Court for approval the following settlement schedule:

- Notice Date: 30 days after the Preliminary Approval Date;

- Final Claim Form Deadline: 120 days after Notice Date;

- Final Objection/Opt-Out Deadline: 120 days after Notice Date;

- Deadline to move for Final Approval: 15 days before Final Approval Hearing;

- Final Approval Hearing: no less than 30 days after the Late Claim Form Deadline.

## EFFECT OF THE AGREEMENT ON THE PENDING ACTION
## AND CONTINUING JURISDICTION

128.    The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction for the implementation and enforcement of the terms of this Agreement, and all Parties hereto and their counsel shall submit to the exclusive

28

jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

## MODIFICATION OF THE AGREEMENT

129.    This Agreement represents the entire agreement among the Parties, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein, or to determine the meaning of any provisions herein. This Agreement can be modified only on the written consent of all the Parties.

## NOTIFICATION OF PARTIES UNDER THE SETTLEMENT AGREEMENT

130.    All notices contemplated by this Agreement, other than notice to the Class shall be delivered by hand, by overnight mail, or by email.

## COUNTERPARTS

131.    This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same instrument and will be binding when it has been executed and delivered by the last signatory. A facsimile or scanned signature is an original signature for purposes of this Agreement.

## GOVERNING LAW

132.    This Agreement shall be governed by and construed and interpreted according to the law of the State of New York without reference to conflicts of law principles.

## MUTUAL INTERPRETATION

133.    The Parties stipulate that this Agreement was negotiated on an "arm's length" basis between parties of equal bargaining power to resolve a bona fide dispute between the Parties concerning liability and the availability of damages. Also, Class Counsel and Counsel for Defendant jointly drafted this Agreement. Accordingly, this Agreement shall not be construed in

favor of or against any of the Parties. Neither Party shall be considered the drafter of this Agreement for purposes of interpreting the Agreement, or the application of any rule of construction.

## BINDING UPON SUCCESSORS

134.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, administrators, heirs, successors, and assigns.

## NULLIFICATION

135.    This Agreement is null and void in the event that any of the following do not occur:

     i.  Preliminary Approval of this Agreement by the Court; or

    ii.  Final Approval by the Court or an appellate court with jurisdiction.

Dated: April 4, 2024
     New York, NY

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL
Matthew D. Brinckerhoff
O. Andrew F. Wilson
Sana Mayat
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

SURVEILLANCE TECHNOLOGY
OVERSIGHT PROJECT
Albert Fox Cahn
David Alfasi Siffert
c/o Urban Justice Center 40
Rector Street; Ste 9th Floor
New York, N.Y. 10006
(646) 602-5600

*Counsel for the Plaintiff Class and*
*Individual Plaintiff Class Representatives*

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
City of New York
By: Rachel Seligman Weiss
    Carolyn Depoian
    Zachary Kalmbach
100 Church Street, 3rd Floor
New York, New York 10007
*Attorneys for Defendant*
*City of New York*

# Appendix A



**PREPARED FOR:**
*Clark v City of NY Settlement*
**April 4, 2024**

**PREPARED BY:**
**Tiffaney Janowicz**
**612.770.8805**
**TJanowicz@RustConsulting.com**

**CLASS ACTION NOTICE AND SETTLEMENT SERVICES
MAILING IN FOUR LANGUAGES
NOTICE AVAILABLE IN 3 ADDL LANGUAGES ON WEBSITE**

**PROPOSAL SUMMARY**

| | |
|---|---|
| Estimated Class Size | 3,604 |
| Estimated Number of Paid Claims | 1,054 |

**Notice Costs**

| | |
|---|---|
| Class Data Management | $3,020 |
| Notice | 21,115 |
| Website | 4,500 |
| | $28,635 |

**Administration Costs**

| | |
|---|---|
| Processing | $18,799 |
| Call Center (Automated and Live) | 20,174 |
| Distribution and Tax Reporting | 20,854 |
| Fees | 22,000 |
| Expenses | $8,200 |
| | $90,028 |
| Less: 10% on Standard Hourly Rates | ($8,005) |
| | |
| Total Project Cost | $110,659 |
| | |
| **Not-To-Exceed** | **$105,000** |

THANK YOU FOR GIVING RUST CONSULTING THE OPPORTUNITY TO SUBMIT THIS PROPOSAL. WE APPRECIATE YOUR CONSIDERATION.

---

**HIGHLIGHTS & ASSUMPTIONS**

**This proposal includes the following assumptions and highlights:**

- **ADDRESS UPDATES PRIOR TO MAILING.** Batch trace using TransUnion and NCOA prior to mailing. Optional trace through CLEAR any undeliverable notices at $15 per trace and $2.64 per remail with $1,000 setup fee, not included in the cap.

- **DIRECT NOTICE.** Notice with a claim form via First Class Mail, 3 sheets of paper, mailed with a return Business Reply Envelope (postage prepaid). Reminder notices (double postcard with COA return) to those who have not filed claims; sealed.

- **CLAIMS REVIEW.** Basic review, matching against class list. Online claims system will require the entry of the claimant ID number provided on the claim form.

- **CALL CENTER.** 24/7 Automated call center with answers to frequently asked questions and the opportunity to speak to an agent during normal business hours, Monday through Friday.

- **DISTRIBUTION.** W-9 request mailing prior to distribution. Payments mailed via US First Class Mail.

- **TRANSLATION COSTS INCLUDED.** Translations for notice, claim form and letters provided at cost.  Language line services are available to our call center representatives, cost based on usage.

The information contained in this document is considered confidential information, trade secrets and other proprietary information of Rust Consulting, Inc. and disclosure to the public is restricted.  This information is not to be disclosed under any Freedom of Information Act, Public Records Act or similar law or regulation, as adopted by any jurisdiction without the prior written consent of Rust Consulting, Inc.

**PREPARED FOR:**
*Clark v City of NY Settlement*
**April 4, 2024**

**PREPARED BY:**
**Tiffany Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



**KEY ASSUMPTIONS USED TO PREPARE THIS PROPOSAL**

| Class Size | | 3,604 |
|---|---|---|

**Legal Notification**

| | | |
|---|---|---|
| Mailed Notice | 3,604 | 100.0% |
| Forwarded Notices | 18 | 0.5% |
| Undeliverable Notices | 360 | 10.0% |
| Mailed Reminder Notice | 3,063 | 85.0% |

**Call Center**

| | | |
|---|---|---|
| Number of Call Center Contacts | 541 | 15.0% |
| Number of Calls in IVR System | 541 | 100.0% |
| Number Reaching CSR | 432 | 80.0% |
| Number Requiring Translation Services | 108 | 25.0% |
| Connect Minutes per Call - IVR | 2 | |
| Connect Minutes per Call - CSR | 5 | |
| Connect Minutes per Call - Translation Services | 20 | |

**Claimant Communications**

| | | |
|---|---|---|
| Opt Outs Received | 2 | 0.05% |
| Correspondence/Email Received | 180 | 5.0% |
| Total Claim Forms Received | 1,081 | 30.0% |
| Hard Copy Claim Forms Received | 432 | 40.0% |
| Online Claim Forms Received | 649 | 60.0% |
| Deficient Claim Forms | 108 | 10.0% |
| Responses to Deficient Claim Forms | 81 | 75.0% |

**Distribution**

| | | |
|---|---|---|
| W-9 Letters | 1,054 | 29.3% |
| Mailed Checks | 1,054 | 29.3% |
| Undeliverable Checks | 11 | 1.0% |
| Re-Mailed Checks | 8 | 75.0% |
| Reissued Checks Requested by Claimant | 5 | 0.5% |

**STANDARD HOURLY RATES (Subject to Change)[1]**

| | |
|---|---|
| Vice President | $295-365 |
| Director | $217-283 |
| Program Manager/Project Manager | $170-225 |
| Technical Consultant | $150-246 |
| Call Center/Processing Manager | $195-225 |
| Call Center/Processing Supervisor | $110 |
| Customer Service Representative (CSR) | $61 |
| Processor | $65 |
| Other | $63-238 |

**PREPARED FOR:**
*Clark v City of NY Settlement*
**April 4, 2024**

**PREPARED BY:**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



### ◢ Class Data Management[2]

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Receive Data File | 1 | File | 500 | 500 |
| Add'l Data Processing, Deduplication, Fix Nonconforming Data | 12 | Hours | 210 | 2,520 |
| | | | **SUBTOTAL** | **$3,020** |

### ◢ Notice

**CAFA NOTICE**

| | | | | |
|---|---|---|---|---|
| Prepare and Coordinate CAFA Notice | 1 | One-Time Fee | 1,700 | 1,700 |
| Data Analysis and Creation of Class Member List By State | 2 | Hours | 210 | 420 |
| Post to CAFA Website and Deploy Notices w/ Link | 1 | One-Time Fee | 500 | Waived |
| Postage - Priority Mail (at Cost) | 52 | Notices | 10.15 | 528 |

**INITIAL MAILED NOTICE[3]**

| | | | | |
|---|---|---|---|---|
| Notice Design, Mailing Setup and Coordination | 15 | Hours | 170 | 2,550 |
| BRM Accounting Fee for Post Office | 1 | One-Time Fee | 930 | 930 |
| CASS/NCOA/LACS Processing | 1 | One-Time Fee | 150 | 150 |
| Batch Trace TransUnion Prior to Mailing | 3,604 | Traces | 0.25 | 901 |
| Print and Mail Notice Package | 3,604 | Notices | 0.60 | 2,162 |
| Postage - Notice Package | 3,604 | Notices | 0.64 | 2,307 |

**FOLLOW-UP TO INITIAL NOTICE**

| | | | | |
|---|---|---|---|---|
| Receive Undeliverable Mail and Update Database | 378 | Notices | 1.00 | 378 |
| Mail Individual Notice Upon Request | 18 | Notices | 2.00 | 36 |
| Postage - Notice Package | 18 | Notices | 0.64 | 12 |

**REMINDER NOTICE (DOUBLE-PANEL POSTCARD)**

| | | | | |
|---|---|---|---|---|
| Notice Design, Mailing Setup and Coordination | 8 | Hours | 170 | 1,360 |
| Print and Mail Reminder | 3,063 | Postcards | 0.28 | 858 |
| Postage - Postcard | 3,063 | Postcards | 0.53 | 1,624 |

**PUBLICATION NOTICE**

| | | | | |
|---|---|---|---|---|
| See Attached Listing | 1 | One-Time Fee | 5,200 | 5,200 |
| | | | **SUBTOTAL** | **$21,115** |

### ◢ Website

**WEBSITE**

| | | | | |
|---|---|---|---|---|
| Setup and Load Documents | 1 | One-Time Fee | 1,000 | 1,000 |
| Draft and Post Website Content | 10 | Hours | 170 | 1,700 |
| Monthly Maintenance/Hosting | 12 | Months | 150 | 1,800 |
| | | | **SUBTOTAL** | **$4,500** |

**PREPARED FOR:**
*Clark v City of NY Settlement*
April 4, 2024

**PREPARED BY:**
**Tiffaney Janowicz**
612.770.8805
TJanowicz@RustConsulting.com



## ◤ Processing[4]

| OPT-OUTS AND CORRESPONDENCE/EMAIL | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Receipt and Process | 20 | Hours | 90 | 1,800 |

| HARD COPY CLAIM FORMS | | | | |
|---|---|---|---|---|
| Draft Claims Procedures, Training and Reports | 10 | Hours | 170 | 1,700 |
| BRE Postage for Returned Claims | 432 | Claims | 0.75 | 324 |
| Receipt and Data Capture | 432 | Claims | 1.65 | 714 |
| Imaging (2 Pages per Form) | 865 | Pages | 0.12 | 104 |

| ONLINE CLAIM FORM (ENGLISH) | | | | |
|---|---|---|---|---|
| Coordinate Design and Screen Development | 10 | Hours | 170 | 1,700 |
| Develop Online Claim Filing Screens and Online W-9 Module | 30 | Hours | 210 | 6,300 |
| Download Forms from Website & Update Database | 649 | Claims | 0.15 | 97 |

| VALIDATION | | | | |
|---|---|---|---|---|
| Validate Claims | 30 | Hours | 115 | 3,450 |

| PROCESS DEFICIENT CLAIM FORMS | | | | |
|---|---|---|---|---|
| Draft Letters and Coordinate Mailing | 10 | Hours | 170 | 1,700 |
| Generate Cure Letter and Mail (Minimum $150/batch) | 108 | Letters | 1.50 | 162 |
| Postage - Letters | 108 | Letters | 0.63 | 68 |
| Receive Response and Update Database | 4 | Hours | 170 | 680 |
| | | | **SUBTOTAL** | **$18,799** |

## ◤ Call Center[5]

| | | | | |
|---|---|---|---|---|
| Set-up | 1 | One-Time Fee | 1,200 | 1,200 |
| Draft Scripting, Coordination and Reports | 15 | Hours | 170 | 2,550 |
| Call Center Management | 12 | Hours | 140 | 1,680 |
| CSR Training | 15 | Hours | 61 | 915 |
| Telephone Support | 12 | Months | 600 | 7,200 |
| Translation Services (Language Line) | 108 | Calls | 30 | 3,240 |
| Interactive Voice Response (Automated Q&A) | 12 | Months | 250 | 3,000 |
| 800# Charges | 3,244 | Minutes | 0.12 | 389 |
| | | | **SUBTOTAL** | **$20,174** |

**PREPARED FOR:**
*Clark v City of NY Settlement*
**April 4, 2024**

**PREPARED BY:**
**Tiffaney Janowicz**
**612.770.8805**
**TJanowicz@RustConsulting.com**

RUST
CONSULTING
An Exela Technologies Brand

## ◢ Distribution and Tax Reporting

| FUND DISTRIBUTION | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Fund Setup, Distribution Coordination and Reports | 20 | Hours | 170 | 3,400 |
| Create Distribution Files, Quality Control | 15 | Hours | 210 | 3,150 |
| Print and Mail W-9 Letters (with reply envelope, postage included) | 1,054 | Letters | 1.00 | 1,054 |
| Postage - Letters | 1,054 | Letters | 0.64 | 675 |
| BRE Postage for Returned W-9 Forms | 1,054 | W-9s | 0.75 | 791 |
| Process W-9 Responses | 1,054 | W-9s | 1.60 | 1,687 |
| Print and Mail Payments | 1,054 | Payments | 1.30 | 1,370 |
| Postage - Award Payments | 1,054 | Payments | 0.64 | 675 |

| REISSUE PROCESSING | | | | |
|---|---|---|---|---|
| Manage Reissue Process | 10 | Hours | 130 | 1,300 |
| Receive Undeliverable Payments and Update Database | 11 | Payments | 1.00 | 11 |
| Address Trace | 11 | Traces | 0.50 | 5 |
| Print and Mail Reissue Payments (minimum $250/batch) | 2 | Batches | 250 | 500 |

| BANKING ACTIVITIES AND TAX REPORTING | | | | |
|---|---|---|---|---|
| System Charges Banking Activities - per check[6] | 1,056 | Payments | 0.22 | 232 |
| Account Reconciliation | 9 | Hours | 170 | 1,530 |
| System Charges Banking Activities | 9 | Months | 225 | 2,025 |
| Annual Fee -QSF Income Tax Reporting | 1 | Years | 1,750 | 1,750 |
| Individual Income Tax Reporting (1099) | 1 | Years | 700 | 700 |
| | | | **SUBTOTAL** | **$20,854** |

## ◢ Fees[7]

| PROJECT MANAGEMENT | | | | |
|---|---|---|---|---|
| Project Planning and Preparation, Client Calls | 20 | Hours | 170 | 3,400 |
| Ongoing Maintenance, Declarations, Reporting | 60 | Hours | 170 | 10,200 |

| TECHNICAL SUPPORT | | | | |
|---|---|---|---|---|
| Ongoing Maintenance, System Modifications, Reporting, QA | 40 | Hours | 210 | 8,400 |
| | | | **SUBTOTAL** | **$22,000** |

## ◢ Expenses

| | | | | |
|---|---|---|---|---|
| Translation Services - Long Form Notices | 6 | Languages | 700 | 4,200 |
| Translation Services - Summary Notices | 5 | Languages | 300 | 1,500 |
| Translation Services - Claim Forms | 3 | Languages | 300 | 900 |
| Translation Services - Minor Edits to Translated Materials | 6 | Languages | 100 | 600 |
| Other Charges and Out-of-pocket Costs[8] | | | | 1,000 |
| | | | **SUBTOTAL** | **$8,200** |

| | |
|---|---|
| Estimated Cost | $118,663 |
| Less: 10% Discount on Standard Hourly Rates | ($8,005) |
| **Total Estimated Cost** | **$110,659** |

**PREPARED FOR:**

*Clark v City of NY Settlement*

**April 4, 2024**

**PREPARED BY:**

**Tiffaney Janowicz**

612.770.8805

TJanowicz@RustConsulting.com



1. All line items above that indicate hourly rates show blended rates.

2. "Receive and Process Database" assumes that data is complete, standardized, and consistent with respect to the formatting and data components needed to mail and calculate settlement payments. Rust prefers tab delimited text file with field headers, but without text qualifiers. (Other formats may be accepted at Rust's discretion.) Data that requires additional efforts can take a significant amount of time and should be considered when setting key settlement dates, especially the mailed notice deadline. Resources used to enhance or further develop non-standardized data will be billed on a time and materials basis according to Rust's current standard hourly rates.

3. Notice Package: Print and mail per unit price is estimated. Actual prices will be provided after form is finalized, prior to mailing. Notice package includes notice, claim form and reply envelope.  Services for notice drafting, claim form design, multiple versions and translations may result in additional hours billed. Onsite vendor quality review will be provided at an additional charge.

4. Claims Processing: "Receipt and Process" includes open, date stamp, label and data capture a 1-page claim form with up to five fields. "Validate" includes accepting or rejecting claims, handling disputes and curing deficient claims.

5. Call Center: The above amounts are estimates based on assumptions noted on Page 2.  Assumes a shared staff delivery service where charges will be allocated on an answered call basis based upon historical call center costs at our standard CSR rates.  A minimum charge of $250 per month will be billed for providing telephone support.

6. Check Processing Charge includes bank activities (electronic clearing, exchange of positive pay files, payment voiding, and online portal usage) and positive pay file review including exception handling.

7. Fees are estimated and will be billed on actual time expended based on the rates found in the current standard Hourly Rates. The rates included in the estimate are a blended estimate of the rates listed above.

8. Out-of-Pocket Expenses: Includes post office box rental, overnight shipments, postage, labels, travel, long distance, data storage and other miscellaneous charges and expenses.

**PREPARED FOR:**

*Clark v City of NY Settlement*

April 4, 2024

**PREPARED BY:**

Tiffaney Janowicz

612.770.8805

TJanowicz@RustConsulting.com



# Terms and Conditions

All administration services to be provided by Rust Consulting to you ("Customer") shall be subject to the following terms and conditions:

1. Services. Subject to the terms hereof, Rust Consulting agrees to provide the Customer with claims administration services (hereinafter, "Claims Services") as specified in the Proposal provided to Customer to which these Terms and Conditions are attached.

2. Term. The terms of this agreement will remain in effect until completion of the Claims Services, unless earlier terminated in accordance with Section 10 hereof.

3. Charges for Services. Charges to the Customer for Claims Services shall be on a time and materials basis at our prevailing rates, as the same may change from time to time. Any fee estimates set forth in the proposal are estimates only, based on information provided by Customer to Rust Consulting. Actual fees charged by Rust Consulting to Customer may be greater or less than such estimate, and Customer shall be responsible for the payment of all such charges and expenses in accordance with Section 4 hereof. Furthermore, Customer will be responsible for payment of all state and local sales and use taxes, if any, levied upon the charges payable by the Customer hereunder. Rust Consulting may derive financial benefits from financial institutions in connection with the deposit and investment of settlement funds with such institutions, including without limitation, discounts on eligible banking services and fees, and loans at favorable rates.

4. Payment of Charges. Payment by Customer of Rust Consulting's monthly invoices shall be due upon receipt thereof. Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law. Decisions of the court and actions of the parties, including disapproval or withdrawal of a settlement, do not affect the Customer's liability to Rust Consulting for payment of Claims Services. Claims Services are not provided on a contingency fee basis.

5. Confidentiality. Rust Consulting agrees to implement and maintain reasonable and appropriate security measures and safeguards to protect the security and confidentiality of Customer data provided to Rust Consulting by Customer in connection herewith. Should Rust Consulting ever be notified of any judicial order or other proceedings in which a third party seeks to obtain access to the confidential data created by or for the Customer, Rust Consulting will promptly notify the Customer, unless prohibited by applicable law. The Customer shall have the option to (1) provide legal representation at the Customer's expense to avoid such access or (2) promptly reimburse Rust Consulting for any of its costs, including attorneys' fees, reasonably incurred in avoiding, attempting to avoid or providing such access and not paid by the entity seeking the data. If Rust Consulting is required, pursuant to a court order, to produce documents, disclose data, or otherwise act in contravention of the obligations imposed by this Agreement, or otherwise, with respect to maintaining the confidentiality, proprietary nature and secrecy of the produced documents or disclosed data, Rust Consulting will not be liable for breach of said obligation.

6. Standard Banking Procedures. In accordance with Rust Consulting's standard banking procedures, Rust Consulting will establish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement agreement stipulates otherwise. In cases where funds are temporarily placed in interest bearing or investment accounts, funds will eventually be migrated to a demand deposit checking account prior to a fund distribution.

7. Rights in Data. Rust Consulting does not convey nor does the Customer obtain any right in the programs, system data, or materials utilized or provided by Rust Consulting in the ordinary course of business in the performance of this Agreement.

8. Document Retention. Unless directed otherwise in writing by Customer, Rust will maintain digitally scanned documents of undeliverable mail, claim forms and other correspondence for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later. Rust Consulting will retain all bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

9. Limitation of Liability: Disclaimer of Warranty. Rust Consulting warrants that our services will be performed with reasonable care in a diligent and competent matter. Our sole obligation will be to correct any non-conformance with this warranty. Rust Consulting shall not be liable, whether under theories of contr act, negligence or other tort, statutory duty or other theories of liability in an amount exceeding the total charges to the Customer for the specific work affected by the error or omission. Rust Consulting will not be liable for any incidental, special, indirect, consequential or exemplary damages of any kind; or for any lost profits, lost opportunities, business interruption or for any liability incurred by the Customer or others to any third party. THE WARRANTIES SET FORTH HEREIN ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE FOR PARTICULAR PURPOSE.

10. Termination. The Claims Services to be provided under this Agreement may be terminated, at will by the Customer upon at least 30 calendar days' prior written notice to Rust Consulting. The Customer's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout that 30 day period. Rust Consulting may terminate this Agreement (i) with 10 calendar days' prior written notice, if the Customer is not current in payment of charges or (ii) in any event, upon at least 3 months' prior written notice to the Customer.

11. Notice. Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier service to the responsible officer or principal of Rust Consulting or the Customer, as applicable, and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service.

12. Force Majeure. To the extent performance by Rust Consulting of any of its obligations hereunder is substantially prevented by reason of any act of God or by reason of any other matter beyond Rust Consulting's reasonable control, then such performance shall be excused and this Agreement, at Rust Consulting's option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

13. Nonwaiver of Rights. No failure or delay on the part of a party in exercising any right hereunder will operate as a waiver of, or impair, any such right. No single or partial exercise of any such right will preclude any other or further exercise thereof or the exercise of any other right. No waiver of any such right will be effective unless given in a signed writing.

14. Jurisdiction. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in the Court.

15. Survival. All accrued payment obligations hereunder, any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 7 (Rights in Data); Section 5 (Confidentiality), Section 9 (Limitation of Liability; Disclaimer of Warranty), and Section 14 (Jurisdiction).

16. Entire Agreement. These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein. No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.