UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMILLA CLARK and ARWA AZIZ, on Behalf of
Themselves and Others Similarly Situated, and
TURNING POINT FOR WOMEN AND
FAMILIES,

                    Plaintiffs,

      -against-

CITY OF NEW YORK,

                Defendant.

Case No.: 18-cv-02334 (AT)(KHP)

---

**UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

**PAGE NO.**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Motion Practice and the Injunctive Settlement ....................................... 2

    B.    Discovery and Factual Development ..................................................... 3

    C.    Mediation, Summary Judgment, and Settlement ................................... 4

SUMMARY OF THE SETTLEMENT TERMS ........................................................ 5

    A.    Monetary Relief for the Settlement Class ............................................. 6

        1.    Award Amounts ....................................................................... 6

        2.    Eligibility ................................................................................ 7

        3.    Releases................................................................................... 8

    B.    Administrative Costs, Service Awards, and Attorneys' Fees and Costs ............... 8

        1.    Administrative Costs................................................................. 8

        2.    Service Awards ......................................................................... 9

        3.    Attorneys' Fees and Costs ....................................................... 10

ARGUMENT ...................................................................................................... 10

PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.............……..........10

    A.    Adequacy of Representation ............................................................... 12

    B.    Arm's Length Negotiations.................................................................. 14

    C.    Adequacy of Relief ........................................................................... 15

        1.    Costs, Risk, Delay of Trial, and Appeal ................................... 15

        2.    Effectiveness of the Proposed Method of Distributing Relief.................. 16

        3.    The Terms of Any Proposed Award of Attorneys' Fees and Expenses.................................................................................. 18

        4.    Any Agreement Required to be Identified Under Rule 23(e)(3) ............. 19

i

D.      Other *Grinnell* Adequacy Factors ............................................................ 19

E.      Equitable Treatment of Class Members ...................................................... 22

F.      Notice and Distribution Process ................................................................. 23

        1.      Individualized Notice ....................................................................... 23

        2.      Form and Content of Notices, Settlement Website, Claim Submission, and
                Class Member Questions ................................................................. 24

CONCLUSION ............................................................................................................ 26

# TABLE OF AUTHORITIES

**PAGE NO.**

## CASES

*Betances v. Fischer*,
   304 F.R.D. 416 (S.D.N.Y. 2015) .......................................................................... 17

*Brown v. Kelly*,
   244 F.R.D. 222 (S.D.N.Y. 2007) .......................................................................... 17

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)................................................................................... 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................... passim

*Cordes & Co. Fin. Servs., Inc. v. AG. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)..................................................................................... 16

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................... 18, 19

*Diaz v. E. Locating Serv., Inc.*,
   No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ......................... 15

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... 25, 27

*George v. Shamrock Saloon II, LLC*,
   No. 17 Civ. 6663, 2021 WL 3188314 (S.D.N.Y. July 28, 2021) .......................... 30

*Gordon v. Vanda Pharms. Inc.*,
   No. 19 Civ. 1108, 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)................... 15, 18

*Hall v. Children's Place Retail Stores, Inc.*,
   669 F. Supp. 2d 399 (S.D.N.Y. 2009)................................................................... 25

*Hernandez v. Merrill Lynch & Co., Inc.*,
   No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ......................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................... 21

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)..................................................................... 19

*In re Crazy Eddie Secs. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993) ........................................................ 25

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................... 23

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................. passim

*In re Initial Public Offering Secs. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................... 25

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................ 30

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 20

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................ 20, 21, 24

*In re Polaroid*,
  2007 WL 2116398 (S.D.N.Y. Jul. 19, 2007) ......................................... 22

*In re Take Two Interactive Sec. Litig.*,
  No. 06 Civ. 1131, 2010 WL 11613684 (S.D.N.Y. June 29, 2010)........... 22

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)................................................................. 14

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................... 21

*Lea v. Tal Educ. Grp.*,
  No. 18 Civ. 5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............ 18, 19, 21

*Matheson v. T-Bone Rest., LLC*,
  No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011).......... 24

*McMahon v. Olivier Cheng Catering and Events, LLC*,
  No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........... 24

*Mikhlin v. Oasmia Pharm. AB*,
  No. 19 Civ. 4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........... 16

*Nichols v. Noom, Inc.*,
  No. 20 Civ.3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ........... 24

*Parker v. City of New York*,
  No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) .................................... 23, 24

*Perez, et al. v. Amazon.com, Inc.*,
  No. 23-cv-2251 (S.D.N.Y.) ...................................................................................................... 18

*Rosenfeld v. Lenich*,
  No. 18 Civ. 6720, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ...................................... 17, 23

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................................... 14, 18, 25

*Wise v. Kelly*,
  620 F. Supp. 2d 435 (S.D.N.Y. 2008) .................................................................................... 17

*Yates v. Checkers Drive-In Restaurants, Inc.*,
  No. 17 Civ. 9219, 2020 WL 6447196 (N.D. Ill. Nov. 3, 2020) ............................................. 28

## STATUTES

Fed. R. Civ. P. 30(b)(6) ..................................................................................................................... 7

Fed. R. Civ. P. 54 ............................................................................................................................ 14

## INTRODUCTION

Jamilla Clark and Arwa Aziz—for themselves and nearly 4,000 other New Yorkers they represent whose religious head coverings were forcibly removed by the New York Police Department ("NYPD")—seek preliminary approval of a settlement of their claims with the City of New York. Under the terms of that agreement, the City has agreed to pay at least $7,824 to each member of the class who files a valid claim for each instance where the NYPD forcibly removed their religious head covering from March 16, 2014 through August 23, 2021.

Because the proposed settlement satisfies the criteria for preliminary approval, Plaintiffs respectfully request the Court:

(i)     grant preliminary approval of the settlement agreement dated April 4, 2024 (the "Settlement Agreement"), Exhibit 1[1];

(ii)    approve Rust Consulting, Inc. as the settlement administrator (the "Administrator");

(iii)   approve the form, content, and manner of class notice and authorize it to be distributed as described in the Declaration of Tiffaney Janowicz, as well as the proposed notices to class members and the proposed claim form. Exs. C-E;

(iv)    order the payment of the costs of notice and administration to the class administrator pursuant to the terms and conditions set forth in the settlement;

(v)     set a hearing date for consideration of final approval of the settlement, service awards to Plaintiffs Jamilla Clark and Arwa Aziz and to class members deposed as part of absent class discovery, and class counsel's application for attorneys' fees and expenses; and

(vi)    grant such other and further relief as may be just and proper.

Defendants do not oppose entry of the proposed consent order attached as Exhibit 2 to the Wilson Declaration, so long as it conforms to the terms of the Settlement Agreement.

---

[1] All exhibits identified by number are attached to the Declaration of O. Andrew F. Wilson, dated April 5, 2024 ("Wilson Decl."), filed in support of this motion. All exhibits identified by letter are attached to the Declaration of Tiffaney Janowicz, dated April 4, 2024, filed in support of this motion.

## BACKGROUND

Jamilla Clark and Arwa Aziz first filed their complaint, on behalf of themselves and a putative class against the City, challenging the NYPD head covering removal policy on March 16, 2018. They alleged the removal of religious head coverings for booking photographs violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment to the United States Constitution, and Article 1, Section 3 of the New York State Constitution. Dkt. 1. The complaint sought declaratory and injunctive relief as well as monetary damages along with all other members. *Id.* at ¶¶ 25-26.

### A.  Motion Practice and the Injunctive Settlement

The City moved to dismiss the complaint on June 13, 2018, challenging whether Plaintiffs had standing to pursue injunctive or declaratory relief; whether Plaintiffs alleged a constitutional violation; whether Plaintiffs possessed a claim under state law; and whether the City of New York is immune from punitive damages. Dkt. 22. Plaintiffs opposed the motion. Dkt. 31. On September 17, 2021, the Court denied the City's motion to dismiss. Dkt. 177.

On February 16, 2021, the Court granted Plaintiffs' motion over the City's opposition and certified a class consisting of all persons who were required to remove their religious head coverings for post-arrest photographs under the NYPD's prior policy. Dkt. 157 at 1, 11.

Two years later, the Parties entered a partial settlement that has fundamentally changed the way the NYPD treats people who wear religious head coverings. Dkt. 148; 148-1. The NYPD changed its policy and adopted Patrol Guide Procedure No. 208-83 which remains in effect today. The new policy permits all arrestees to retain their religious head covering unless they fall within limited exceptions where specific evidence would be obscured by a head covering or a person was arrested outside of their home without a head covering.

2

### B.  Discovery and Factual Development

Before filing the action, Class Counsel thoroughly investigated the underlying claims and collected significant factual information through pre-suit research and data gathering, including detailed interviews of the Named Plaintiffs about their own experiences, extensive legal research concerning the relatively novel application of RLUIPA to advance claims for removal of religious head coverings, retention of an expert on religious head coverings to explore the nature and basis of head covering practices in different religions, and research concerning national standards policies regarding religious head covering. Wilson Decl. ¶ 16.

During discovery, Class Counsel diligently pursued all information relevant to establishing Plaintiffs' claims, propounding numerous rounds of discovery requests and reviewing documents Defendant produced. Class Counsel's discovery requests sought relevant policies, practices, and directives of the NYPD; photographs of thousands of class members; and documentation regarding the removal of religious head coverings and retention of uncovered photographs. *Id.* at ¶ 23.

Class Counsel took two Rule 30(b)(6) depositions of Defendant City of New York. The depositions sought evidence of Defendant's policies, practices, and training regarding the forced removal of religious head coverings and the retention of photographs. *Id.* at ¶ 24. Class Counsel also conducted expert discovery regarding the various religious practices of head covering. Class Counsel retained an expert to prepare a report, reviewed Defendant's expert report and conducted a deposition of Defendant's expert. *Id.*

The Parties also engaged in extensive meet-and-confers regarding discovery in this case and sought the Court's intervention on numerous occasions. Class Counsel opposed Defendant's motion for absent class discovery twice. When the Court ultimately granted Defendant the opportunity to conduct absent class discovery, Class Counsel expended additional effort to

contact 550 class members. Class Counsel fielded phone calls from class members and enlisted a class administrator to find accurate contact information to facilitate communication. Class Counsel prepared and defended seven class member depositions. *Id.* at ¶ 25.

### C.  Mediation, Summary Judgment, and Settlement

After being referred to mediation on April 5, 2021, Dkt. 165, the Parties engaged in extensive negotiations before a Court-appointed mediator for seven months before negotiations broke down in November 2021. The Parties resumed mediation before Magistrate Judge Parker on September 26, 2023 and November 20, 2023.

While settlement negotiations were underway, Class Counsel moved for partial summary judgment on liability and completed briefing before the November mediation to establish the merits of the case and inform Plaintiffs' settlement position. Dkt. 306, Dkt. 321.

By December 1, 2023, the Parties reached an agreement in principle that included a $17,500,000 common fund with $4,375,000 set aside for incentive payments, attorneys' fees, and administrative costs. The Parties continued with multiple meetings and telephonic conferences amongst themselves from November 2023 to April 2024, regarding the precise terms of the Settlement Agreement. *Id*. at ¶ 28.

The City provided a Class List of all individuals who had a religious head covering removed for an official NYPD booking photograph according to its electronic records. The Parties conferred regarding the Class List and agreed that individuals on the Class List would be presumptively considered part of the Settlement Class and eligible for a settlement award. Such people would not be required to submit proof of removal of a religious head covering. *Id*. at ¶ 29. An individual not on the Class List may submit a claim following the instructions set forth in the Settlement Agreement. The Parties will work together in good faith to determine whether such a claim has merit. *Id*.

4

The Parties also negotiated several other key terms of the Settlement Agreement. For example, Class Counsel successfully negotiated and obtained an agreement from Defendant to limit liens and judgments that the City could deduct from Class Members' monetary awards. *Id.* at ¶ 30. The Parties also negotiated details regarding the Claims process, including identification requirements for Class Members, the timing of the Claims Period and a process for late claims. *Id.*

On April 4, 2024 the Parties ultimately reached an agreement on all terms of a settlement agreement, which was executed on April 4, 2024. Ex. 1.

## SUMMARY OF THE SETTLEMENT TERMS

The City has agreed to a Class Fund of seventeen million, five hundred thousand dollars ($17,500,000) for all Class Member claims. The Settlement Class follows the Court's class certification decision and consists of "any individual who had a religious head covering removed for an official NYPD booking photo within the Class Period." Ex. 1 at ¶ 17. The "Class Period" is defined as the period between March 16, 2014 (four years prior to the filing of the Complaint on March 16, 2018) and August 23, 2021 (the date the City changed its policy, according to the terms of the parties' injunctive settlement). *Id.* at ¶ 18.

The "Settlement Costs" will be the amount of four million, three hundred and seventy-five thousand dollars ($4,375,000) set aside from the Class Fund for incentive payments, attorneys' fees, and administrative costs. *Id.* at ¶ 41. The "Distribution Amount" will be the remaining amount of thirteen million, one hundred and twenty-five thousand dollars ($13,125,000) from the Class Fund which is the total amount available to distribute to Class Members who file claims. *Id.* at ¶ 23.

The Distribution Amount of $13,125,000 will be allocated based on the number of Claimants such that every Claimant receives the same amount for each instance of removal. The

Distribution Amount is subject to increase or reversion to the City, depending on the participation rate as set forth below. *Id.*

Plaintiffs' awards will be paid after the Court provides final approval of the Settlement Agreement and that final approval order becomes "final" (*i.e.*, the date of the final approval order if no objection has lodged a timely objection, or after all appeals by an objector have been resolved, if any). *Id.* at ¶ 24.

These terms are summarized below in two broad categories: (a) monetary relief for the class; and (b) administrative costs, service awards, and attorneys' fees and costs.

## A.     Monetary Relief for the Settlement Class

The settlement's monetary relief terms include (1) award amounts; (2) eligibility criteria; and (3) releases.

### 1.     Award Amounts

The Settlement Agreement is structured as a common fund that would yield a recovery for each Class Member depending on the eventual participation rate in the range of $7,824 to $13,125 for each instance of removal during the Class Period. *Id.* at ¶ 48. The Distribution Amount will be allocated based on the number of Claimants such that every Claimant receives the same amount. This will be determined as follows: (1) if the percentage of Incidents for which Class Members submit claim forms is 20% or greater, up to and including 40%, then the Distribution Amount shall be divided equally amongst all Claimants; (2) if the percentage of Incidents for which Class Members submit Claim Forms is greater than 40%, the City shall supplement the Class Fund and the Distribution Amount such that each Claimant receives $7,824 for reach instance of removal; and (3) if the percentage of Incidents for which Class Members submit Claim Forms is less than 20%, then all Claimants shall receive $13,125 and the remaining amount in the Class Fund shall be returned to the City. *Id.* at ¶ 48.

Any Class Member whose religious head covering was removed for an official NYPD booking photograph during more than one arrest during the Class Period is entitled to payment for each arrest and their settlement will be calculated by multiplying the recovery amount by the instances of removal during the Class Period. *Id.* at ¶ 49.

Some liens will be applied to the settlement distribution. Any open child support lien in New York State and docketed parking judgments owed to the Department of Finance ("DOF") will be deducted from a Class Member's award (with the City providing prior notice to that Plaintiff that they are the subject of such liens). The Parties have agreed to work in good faith to not have the DOF assert any liens or judgments against any Award Amount. In no event shall DOF seek to reduce a Class Members' settlement payments based on any lien other than docketed parking judgments and, in that situation, DOF will not seek to reduce the Class Members' settlement payments by more than $500 in docketed parking judgment debt. *Id.* at ¶ 64.

### 2.    Eligibility

People are eligible for a payment under the Settlement Agreement if they submit a timely and complete Claim Form. *Id.* at ¶ 25. If an individual is contained on the "Class List" prepared by the Parties, they will be presumptively considered to have had their religious head covering removed for an official NYPD booking photograph within the Class Period. *Id.* at ¶ 20. To be timely, a claim must be submitted by the Final Claim Form Deadline, which will be no sooner than 120 days after the Notice Date. The Notice Date will be no sooner than 30 days after the Court's preliminary approval of the Settlement Agreement. *Id.* at ¶ 32.

The Settlement Agreement also permits the submission and payment of untimely claims if they are filed with good cause within 30 days of the Final Claim Form Deadline. *Id.* at ¶¶ 91-92.

The Settlement Agreement also permits the duly-appointed legal representatives of deceased Class Members to recover monetary relief for which the Plaintiff would have been eligible. *Id.* at ¶ 88. Legal representatives who can provide proof of the Plaintiff's death and appropriate documentation that they have been properly appointed a representative of the Plaintiff's estate will be permitted to sign and submit a claim. *Id.*

### 3.      Releases

Class Members who do not file valid requests for exclusion from the Settlement Class will be bound by the terms of the Settlement Agreement, including a release of all claims that they have, could have had, or could be brought against Defendant based upon or arising out of the removal of religious head coverings for official NYPD booking photographs. *Id.* at ¶ 39.

### B.      Administrative Costs, Service Awards, and Attorneys' Fees and Costs

Administrative costs, service awards, and attorneys' fees and costs ("Settlement Costs") will be limited to four million, three hundred and seventy-five thousand dollars ($4,375,000) and set aside from the Class Fund. The Parties have selected an Administrator which will administer the settlement and have agreed upon the distribution of service awards to the two Class Representatives and to Class Members who were deposed as part of absent class discovery. The City has agreed to pay Class Counsel the attorneys' fees and costs in the amount remaining after administrative costs and incentive awards are deducted from the Settlement Costs.

### 1.      Administrative Costs

The Parties selected Rust Consulting, Inc. ("Rust") as the Administrator, which has extensive experience administering class action agreements. Wilson Decl. ¶ 46; Janowicz Decl. ¶¶ 1-2; Janowicz Decl. Exhibit A (curriculum vitae outlining Rust's services and experience).; Exhibit B (curriculum vitae outlining Tiffaney Janowicz' services and experience). Under the terms of the Settlement Agreement, Rust's administrative costs, costs of direct notice, and costs

of publication notice will be paid through the $4,375,000 of the Class Fund which Defendant will place into a designated Escrow Account within fourteen days after Preliminary Approval is granted. Ex. 1 at ¶ 68.

In addition to the notice program described *infra* Section IV, Rust's duties administering the Settlement Agreement include: (1) locating Class Members; (2) issuing notice, including information about the right to object or Opt Out of the settlement; (3) distributing Claim Packets to and receiving executed original Claim Forms from Class Members; (4) establishing and administering the Qualified Settlement Fund ("QSF") and upon conclusion of the process, closing the Fund; (5) determining eligibility for awards on the basis of information provided by counsel for the Parties and the Class Members, and validating the claims; (6) calculating the amounts of awards; (7) issuing and mailing payments to eligible Class Members, and issuing and filing all required tax forms and statements; (8) responding to inquiries from Class Members about this Agreement and the procedures contained herein, including by the use of a toll-free number and a website; (9) collating all objections to the Agreement for Class Counsel and Counsel for Defendant; (10) creating a database of Class Members who have filed timely and valid Claim Forms; (11) creating a database of Opt-Outs; (12) coordinating and advancing payment for publication notice; (13) providing the Parties with regular bills and a final accounting; and (14) to the extent not listed in the Settlement Agreement, the tasks enumerated in the Administrative Proposal attached as Appendix A to the Settlement Agreement. Ex. 1 at ¶ 72 & Appendix A; Janowicz Decl. ¶ 3; Wilson Decl. ¶ 47.

## 2. Service Awards

Plaintiffs will request in their Motion for Final Approval that the Court approve service awards of $35,000 for the two Named Plaintiffs and $7,000 for the Class Members who were deposed as part of absent class discovery, in recognition of the services they rendered on behalf

of the class. Ex. 1 at ¶ 76. Those services included providing factual information about their experiences in NYPD custody, including the forced removal of their religious head coverings for official booking photographs. Named Plaintiffs also approved key terms of the settlement and were available for settlement conferences. Wilson Decl. ¶ 45. The Court need not decide at this juncture whether the service awards Plaintiffs will request are reasonable; Plaintiff will brief that question in advance of the Final Approval Hearing ("Fairness Hearing").

### 3. Attorneys' Fees and Costs

Prior to the Fairness Hearing, Class Counsel will apply for an award of attorneys' fees and costs in the amount remaining after administrative costs and incentive awards are deducted from the Settlement Costs, $4,375,000. Ex. 1 at ¶ 74. Class Counsel's fees and costs will not be deducted from any settlement payments to Class Members, although the benefit to the Class will be a factor in Class Counsel's fee application. The City will not object to this application for attorneys' fees and costs. *Id.*

The Court need not decide attorneys' fees and costs now; pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. The Parties agreed not to appeal or challenge the Court's award of attorneys' fees and expenses. *Id.* Should the Court award Class Counsel attorneys' fees in an amount that is less than the amount remaining in the Escrow Account, any remaining amount will be added to the Distribution Amount. *Id.*

### ARGUMENT

### PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391

F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").[2] "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012); *see also Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (giving "weight to the parties' judgment that the settlement is fair and reasonable"). The Parties here acted responsibly in reaching a settlement.

Preliminary approval of a settlement should be granted where a party would "be likely able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (standard for preliminary approval). In other words, the court "must consider the factors relevant to final approval and certification, and it must conclude that it is likely to find that those factors are satisfied." *Gordon v. Vanda Pharms. Inc.*, No. 19 Civ. 1108, 2022 WL 4296092, at *2 (E.D.N.Y. Sept. 15, 2022).

Factors relevant to final approval under Rule 23(e)(2) are: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Where applicable, courts in this district also consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) that, prior to the 2018 amendments to Rule 23, governed the analysis of whether a settlement was "fair, reasonable, and adequate." *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692; *Gordon,* 2022 WL 4296092, at *3.

---

[2] All citations have been "cleaned up."

Here, the following relevant factors are addressed below: (a) adequacy of representation, (b) existence of arm's-length negotiations, (c) adequacy of relief, (d) other *Grinnell* factors; and (e) equitableness of treatment of class members.[3] Finally, (f) the adequacy of notice is also presented. Each of these factors favors preliminary approval.

### A.    Adequacy of Representation

Measuring the adequacy of class representatives and counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. AG. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *Mikhlin v. Oasmia Pharm. AB*, No. 19 Civ. 4349, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021).

As this Court held in its Order granting Class Certification, Named Plaintiffs Clark and Aziz have common interests with other members of the class. *See* Dkt. 157 at 7-8. They do not have interests that are antagonistic to the other class members. They suffered the same "general injury as the rest of the class"—removal of a religious head covering for a post-arrest photograph. They seek the same relief as the other class members, namely, damages for the removal of the religious head covering. Dkt. 1; Dkt. 157 at 8. Given their common injuries and the common remedies sought, the Named Plaintiffs have an "interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.

Further, Class Counsel are qualified, experienced, and able to conduct this litigation,

---

[3] The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

assess the strengths and weaknesses of the case, and negotiate settlement. They engaged in successful motion practice to defeat a motion to dismiss and won class certification. Over the course of two and a half years, they sought and obtained hundreds of pages of data, as well as fact witness depositions and expert discovery, in order to document the NYPD policy of removing religious head coverings for post-arrest photographs and the burden on Class Members' religious practice. Much of the discovery sought was heavily-contested. Class Counsel moved for summary judgment and completed briefing to establish the merits of the case and to support Plaintiffs' position in settlement negotiation. Wilson Decl. ¶ 27.

Class Counsel are experienced attorneys with strong reputations and expertise in civil rights law: Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM") has been recognized as having a "wealth of experience handling complex class actions," and has been found adequate by other courts in the context of preliminary class action settlement approval. *See Rosenfeld v. Lenich*, No. 18 Civ. 6720, 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021); *Wise v. Kelly*, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008) (ECBAWM is "one of the most competent, successful, and reputable civil rights firms practicing in this Court"). In at least two class actions where ECBAWM served as lead counsel, courts described the firm as "preeminent." *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010); *Betances v. Fischer*, 304 F.R.D. 416, 428 (S.D.N.Y. 2015). Courts have taken "judicial notice of [Emery Celli]'s high reputation, finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court." *Wise,* 620 F. Supp. at 445.

The Surveillance Technology Oversight Project ("S.T.O.P.") is a non-profit advocacy organization and legal services provider that fights for privacy and works to abolish local

governments' systems of mass surveillance, particularly in New York. S.T.O.P. works to ensure that technological advancements do not come at the expense of age-old rights and has handled other class actions in federal court. *See, e.g., Perez, et al. v. Amazon.com, Inc.*, No. 23-cv-2251 (S.D.N.Y.); *Mallouk, et al. v. Starbucks Corp.*, No. 23-cv-03772 (S.D.N.Y.). S.T.O.P. provided subject matter expertise and litigation support throughout the case.

**B.      Arm's Length Negotiations**

In evaluating procedural fairness, the court must examine "the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116; *see D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)."A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116.

Here, negotiations between the Parties were lengthy, complex, vigorously contested, and conducted at arm's length. The Parties—who were represented by experienced, highly capable counsel—engaged in two sets of settlement negotiations, spanning several months before a court-appointed mediator and a Magistrate Judge to resolve key settlement terms. *Cf. D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (same). The Parties exchanged multiple draft proposals, discussing terms in detail by telephone conference and email, and negotiating over issues such as timing of the claims period, identification requirements, released claims, service awards, and many others. Wilson Decl. ¶ 30. The Parties' "vigorous" litigation of the case and the settlement terms demonstrates their lack of collusion. *Gordon,* 2022 WL 4296092, at *4.

C.        **Adequacy of Relief**

Determining whether relief for the class is adequate requires consideration of: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Rule 23(e)(2)(C); *In re GSE Bonds Antitrust Litig.*, No. 19 Civ. 1704, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019). Here, all four elements weigh in favor of preliminary approval.

1.        **Costs, Risk, Delay of Trial, and Appeal**

By reaching a favorable settlement prior to resolution of dispositive motions or trial, Plaintiffs seek to avoid significant expense, risk, and delay and ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78.

Even if Plaintiffs were to succeed on summary judgment as to liability, a fact-intensive trial would likely be necessary to determine damages. While Plaintiffs believe that they could ultimately establish damages, this would require significant factual development, requiring hundreds of hours of discovery, plus the time and resources required to litigate dispositive motions and prevail at trial, and then prevail again on another inevitable appeal. Wilson Decl. ¶ 55. Class members would not obtain relief for years. The settlement, on the other hand, makes relief available to class members in a prompt and efficient manner. *Lea,* 2021 WL 5578665, at *9 (preliminary approval appropriate where it brought to a close litigation "that could have lasted several more years and cost hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class").

Further, although Plaintiffs believe their case is strong, it is subject to considerable risk, including the risk of maintaining class certification through trial. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Defendants could move to decertify the class and have repeatedly noted their intention to do so or win a dispositive pre-trial motion, or obtain favorable verdict at trial—in those situations Class Members would be left with no relief at all. Even if Plaintiffs win a favorable verdict and an award of damages, the verdict or damages award could be reversed or reduced on appeal. In contrast, "[t]he proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals processes are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Therefore, Rule 23(e)(2)(C)(i), the first *Grinnell* factor (the complexity, expense, and likely duration of the litigation), the fourth *Grinnell* factor (the risks of establishing liability), the fifth *Grinnell* factor (the risks of establishing damages), and the sixth *Grinnell* factor (the risks of maintaining the class action through the trial) all weigh in favor of settlement and approval.

## 2.   Effectiveness of the Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The claims processing method "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card*, 330 F.R.D. at 40 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "To

warrant approval, the plan of allocation must also meet the standards by which the settlement

was scrutinized — namely, it must be fair and adequate.... [a]n allocation formula need only have

a reasonable, rational basis, particularly if recommended by experienced and competent class

counsel." *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11,

40 (E.D.N.Y. 2019) (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y.

2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y.

2014) ("When formulated by competent and experienced class counsel, a plan for allocation of

net settlement proceeds need have only a reasonable, rational basis.").

Here, the Distribution Amount of $13,125,000 will be allocated based on the Class

Member response rate, such that every Claimant receives the same amount as follows: (1) if the

percentage of Incidents for which Class Members submit claim forms is 20% or greater, up to

and including 40%, then the Distribution Amount shall be divided equally amongst all

Claimants; (2)  if the percentage of Incidents for which Class Members submit Claim Forms is

greater than 40%, the City shall supplement the Class Fund and the Distribution Amount such

that each Claimant receives $7,824 for reach instance of removal; and (3) if the percentage of

Incidents for which Class Members submit Claim Forms is less than 20%, then all Claimants

shall receive $13,125 and the remaining amount in the Class Fund shall be returned to the City.

Ex. 1 at ¶ 48. Class Members will be eligible for up to five awards for each time they were

arrested and were compelled to remove a religious head covering.

The claims processing method uses well-established, effective procedures for receiving,

processing, and validating claims. *See Lea,* 2021 WL 5578665, at *11. As described *infra*

(Section IV), the Administrator will distribute hard copy Claim Forms and Summary Notice to

Class Members when it provides direct notice by first-class mail to those Class Members. Ex. 1

at ¶ 82. Notice to potential Class Members will also include electronic links to the settlement website, where Class Members will be able to submit claims electronically. The Administrator will also make the Claim Form available on the settlement website. Class Members can submit claims either by returning the hard copy Claim Form in the envelope with pre-paid postage provided to them, or by submitting a claim online through the settlement website. If the Class Member is on the Class List, they will be recognized as a member of the class and entitled to an award. *Id.* at ¶¶ 16-17.

Further, the Settlement Agreement recognizes deceased Class Members' rights to recovery. *Id.* at ¶ 88. Duly-appointed legal representatives for deceased Class Members are also able to submit claims, with proof that they are the legal representatives. *Id.*

The Settlement also ensures that Class Members are not disadvantaged by failing to meet the claims form deadline as they can submit untimely claims for good cause (as determined by the Administrator) for up to thirty days after the end of the Claims Period. *Id.* at ¶ 91.

### 3.    The Terms of Any Proposed Award of Attorneys' Fees and Expenses

Attorneys' fees and costs will be the amount remaining after administrative costs and incentive awards are deducted from the Settlement Costs, which are $4,375,000. *Id.* at ¶ 74. The City has agreed not to object to the attorneys' fees application. *Id*.

The proposed attorneys' fees and costs are reasonable—but the Court need not evaluate the appropriate fee award now. *See, e.g., In re Polaroid*, 2007 WL 2116398, at *3 (S.D.N.Y. Jul. 19, 2007) (in ERISA class action, approving attorneys' fee award of $4.2 million, representing 28% of $15 million settlement fund). Plaintiffs will brief that question in advance of the Fairness Hearing, at which point the Court will have substantially more information about the number of Class Members who submitted claims by the deadline for timely claims and thus the Actual Benefit to the class. *See In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 1131, 2010 WL

11613684, at *11 (S.D.N.Y. June 29, 2010) (granting preliminary approval of settlement

agreement without consideration of attorneys' fees as such fees would be determined by court

order after the Fairness Hearing and final approval of the agreement).

### 4.      Any Agreement Required to be Identified Under Rule 23(e)(3)

The Parties have not entered into any agreements other than the Settlement Agreement

that has been submitted for approval. Accordingly, this factor poses no obstacle

to preliminary approval. *Rosenfeld,* 2021 WL 508339, at *7.

### D.      Other *Grinnell* Adequacy Factors

None of the other *Grinnell* factors weigh against approval.

For example, the second *Grinnell* factor—the reaction of the class to the settlement—is

neutral. The Court should more fully analyze this factor after notice is issued and Class Members

are given the opportunity to opt out or object. At this early stage in the process, Named Plaintiffs

have expressed their approval of the settlement by agreeing to the settlement agreements. Wilson

Decl. ¶ 44. *Parker v. City of New York*, No. 15 Civ. 6733, 2017 WL 6375736, at *6 (E.D.N.Y.

Dec. 11, 2017) (reaction of class to the settlement may only be evaluated after notice of the

proposed settlement has been sent to the class and the time for objections has passed).

Similarly, the third *Grinnell* factor—the stage of the proceedings and the amount of

discovery completed—favors approval of the Settlement Agreement. The relevant inquiry "is

whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths

and weaknesses of their claims and the adequacy of the settlement." *In re GSE Bonds Antitrust*

*Litig.*, 2019 WL 6842332, at *4. *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436,

458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties

had adequate information about their claims."). As described above (Section I.C.), Plaintiffs

obtained significant discovery from Defendant through contested motion practice, and conducted

numerous depositions and expert discovery. Plaintiffs used this information not only to assemble

proof of Defendant's policies and practices, but also to understand the strengths and weaknesses

of their liability and damages claims. Plaintiff also moved for summary judgment on liability,

having assessed the strength of their claims. As such, Plaintiffs possess adequate information

about the merits of their claims to assess Defendant's position in settlement negotiations. *In re*

*GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at \*4.[4] Given Class Counsel's extensive

document discovery and consultation with experts, this factor favors preliminary approval.

   The seventh *Grinnell* factor—the ability of the defendants to withstand a greater

judgment—does not preclude preliminary approval. Defendant, as a municipality, may be able to

withstand a greater judgment. Nevertheless, courts have not found this factor to bar preliminary

and final approval of class actions settlements involving the City of New York. *See, e.g.*, *Parker*

*v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775, at \*6 (E.D.N.Y. Dec. 4, 2018).

   The eighth *Grinnell* factor—the range of reasonableness of the settlement in light of the

best possible recovery—and the ninth *Grinnell* factor—the range of reasonableness of the

settlement to a possible recovery in light of all the attendant risks of litigation—both favor

preliminary approval. These factors are "often combined for the purposes of analysis." *In re*

---

[4] *See also Nichols v. Noom, Inc.*, No. 20 Civ.3677, 2022 WL 2705354, at \*9 (S.D.N.Y. July 12, 2022) (discovery involved review of over one million pages of documents, complex data sets, numerous meet and confer sessions, court hearings and motion practice, and a dozen fact depositions, favored settlement). In addition, the thoroughness of the discovery performed here favors preliminary approval. *See, e.g.*, *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at \*5 (S.D.N.Y. Mar. 3, 2010) (finding that the parties' "efficient, informal exchange of information" was enough discovery to recommend settlement approval). Courts often grant final approval of class settlements in cases where the parties conducted less discovery than in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at \*5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange with no depositions because "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses").

*Payment Card*, 330 F.R.D. at 47-48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48. The range of reasonableness for a settlement is "a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores,* 396 F.3d at 119. Here, the settlement amount falls within the range of reasonableness in light of the best possible recovery: awards for removals of religious head coverings can vary significantly, depending on the case and can range from a few hundred dollars to many thousands of dollars. An award between $7,824 and $13,125 is reasonable, especially considering that courts frequently approve class settlements even where the benefits represent "only a fraction of the potential recovery." *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 483–85 (S.D.N.Y. 2009) (approving settlement that provided only a "miniscule" 2% of defendants' maximum possible liability and observing that "[t]he Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399, 402 n. 30 (S.D.N.Y. 2009) (approving settlement that amounted to 5-12% recovery of provable damages); *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between 6 and 10 cents for every dollar lost).

Further, the Settlement Agreement limits the liens and judgments that can be asserted against a Class Member's Award Amount—providing financial benefit to Class Members that may not have been available to Class Members had they succeeded at trial. Wilson Decl. ¶¶ 53-56. Finally, there are significant risks of litigation—decertification of the class, loss at trial, or loss on appeal—that would result in Class Members receiving no recovery at all. *Id*. Therefore,

as compared to the best possible recovery and as compared to possible recovery in light of the

risks of litigation, the Settlement Agreement provides better recovery to Class Members. *See*

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (determination of whether

a settlement amount is reasonable "does not involve the use of a mathematical equation yielding

a particularized sum").

### E.   Equitable Treatment of Class Members

After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider

whether "the proposal treats class members equitably relative to each other." Here, Class

Members are treated equitably relative to each other in that they each receive the same amount

for each instance of a removal of a religious head covering during the Class Period.

The structure of the Settlement Agreement allows each Class Member to be eligible for

the same settlement award if they timely submit a complete claim form. While some Class

Members may have had their religious head coverings removed for longer or may have been

particularly traumatized by the removal, most Class Members do not possess the documentation

necessary to show that their religious head covering was removed for an official photograph

during the Class Period. The Settlement Agreement allows for a more streamlined and structured

identification process for the Parties and puts less burden on the Class Members to produce

documentation they may not actively have access to. Therefore, the Settlement Agreement solves

these documentation concerns by awarding each Class Member a set amount for each instance of

release during the Class Period, provided they submit a timely and complete claim form. And if a

Class Member is entitled to claim an award for multiple instances of removal during the Class

Period, the structure of the Settlement Agreement ensures that they receive the same flat

payment for each instance of removal. Wilson Decl. ¶ 35.

Given the legal and factual disputes that persist, the settlement represents a substantial

22

recovery for class members. Application of Rule 23(e)(2) and the *Grinnell* factors weigh in favor

of issuing preliminary approval of the settlement. If a substantial number of objectors come

forward with meritorious objections, the Court can reevaluate its determination then. Because the

settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*,

228 F.R.D. at 184, the Court should grant preliminary approval.

     **F.**    **Notice and Distribution Process**

     The Administrator has designed the Notice Plan, in conjunction with the Parties, to

provide adequate, reasonable, and the best practicable notice to Class Members. The proposed

notices to Class Members and Claim Form, Janowicz Decl. Exs. C-E, and method and sequence

of distribution set forth in the Settlement Agreement (the "Notice Plan"), as further described

below, complies with due process and Federal Rule of Civil Procedure 23, and supports

preliminary approval.

     **1.**   **Individualized Notice**

     The Notice Plan consists of individualized notice to Class Members using a variety of

methods. First, Rust will send a summary notice of the Settlement Agreement, a Claim Form,

and a prepaid return envelope (together, the "Claim Packet") to Class Members using first-class

mail in four languages, with additional languages available on the claims website. Janowicz

Decl. ¶ 11; Ex. 1 at ¶ 48. These materials will inform Class Members of their legal rights and

how they may participate in or opt-out of the Class and will direct Class Members to the

settlement website for further information and the long-form notice. Janowicz Decl. Exs. C-E.

The address for initial mail notice shall be the best address match for the potential Class

Member, as determined by the Administrator after carrying out address research, including

through the national change of address database. Janowicz Decl. ¶ 21. If needed, the

Administrator may be asked to perform additional searches to obtain a more current address.

Janowicz Decl. ¶13.

Second, Rust will publish notice to various news outlets including the Jewish Press, DesiTalk, Weekly Bungalee, Punjab Times, and Urdu Times to better reach Class Members and notify them of the lawsuit and the Settlement Agreement. Janowicz Decl. ¶ 20. The published notice will provide a short overview of the Settlement Agreement and point Class Members to the Settlement website for more information.

Third, for Class Members who have not filed a claim prior to the Final Claim Form Deadline, the Administrator shall send Class Members a reminder notice by way of a postcard, where possible.[5] Janowicz Decl. ¶ 16. *Id.*

Fourth, Class Members who submit their claim form through the settlement website will also be provided with confirmation that their claim has been received and asked to notify friends or family that may potentially be Class Members. *Id.*

**2.   Form and Content of Notices, Settlement Website, Claim Submission, and Class Member Questions**

The proposed notices and Claim Form attached to the Janowicz Declaration effectively communicate the required information about the Settlement Agreement in plain, easily understood language. *Id*. at ¶¶ 61, 63. The summary notice provides all the information that Class Members need to understand their rights in clear, concise, and plain language: the subject of the litigation, the Class definition, and the legal rights and options available to Class Members. Janowicz Decl. Ex. C. No important or required information is missing or omitted. The summary notice refers readers to the settlement website for more information and or to file a claim. Janowicz Decl. ¶ 64.

---

[5] When authorized by a court, notice to the Class Members of the Settlement Agreement via text message does not violate the Telephone Consumer Protection Act. *See Yates v. Checkers Drive-In Restaurants, Inc.*, No. 17 Civ. 9219, 2020 WL 6447196, *5-7 (N.D. Ill. Nov. 3, 2020).

The long-form notice (Exhibit E) plainly and accurately informs Class Members of information about: (1) the nature of this litigation, the Settlement Class at issue, the identity of Class Counsel, and the essential terms of the Settlement Agreement and settlement; (2) how to participate in the settlement; (3) the procedure for legal representatives of deceased Class Members to file claims; (4) when settlement payments will be distributed; (5) Class Counsel's forthcoming application for attorneys' fees and service awards to the Named Plaintiffs; (6) whether a settlement award will be reduced by liens or judgments; (7) providing contact information for the benefits consultant who can provide information on how a settlement award might affect government benefits; (8) this Court's procedures for final approval of the settlement agreement and settlement, including the date, time, and place of the Fairness Hearing; (9) how to challenge or opt-out of the settlement, if they wish to do so; (10) how to contact the Administrator; and (11) providing the settlement website address for more information regarding the Settlement Agreement. Janowicz Decl. Ex. E; Janowicz Dec. at ¶ 65. The long-form notice provides enough information about the settlement generally so that class members understand the entire settlement and have the opportunity to lodge any objection they may have. Janowicz Decl. Ex. E. All print advertising will carry the toll-free phone number and the settlement website address for potential Class Members to request or access the long-form notice. *Id.* at ¶ 62.

While courts have approved class notices even when they provided only general information about a settlement, the information in the proposed notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2).[6]

---

[6] *See George v. Shamrock Saloon II, LLC*, No. 17 Civ. 6663, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) (class notice plainly and accurately informed class about nature of litigation, settlement class, class counsel and fees, procedures for exclusions and objections, and other key issues); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Next, the Claim Form (Exhibit D) has been designed to maximize participation by Class Members, including by minimizing the required information necessary to verify that the person completing the claim form is a person listed in the Class List prepared by Defendant. Janowicz Decl. Ex. D.

Rust will also take numerous additional steps to ensure that class members receive notice, have few difficulties filing claims, and have their questions answered. Rust will establish a settlement website for Class Members to obtain information on the Settlement Agreement, including the long-form notice and a copy of the Settlement Agreement, and to file claims online. Janowicz Decl. ¶ 55. The website will be available in English, and the summary and long-form notices will be available in English, Spanish, Arabic, Bengali, Hebrew, Punjabi, and Urdu. *Id.* at ¶¶ 56, 66. Class Members will be able to download a Claim Form and mail it to the Administrator if they prefer instead of filing a claim through the website. *Id.* at ¶ 55.

Rust will also establish a toll-free phone number for Class Members to request a long-form notice be mailed to them or to listen to answers to frequently asked questions. *Id.* at ¶ 58. During set hours, live operators will staff the call center and respond to calls from Class Members. After hours, a toll-free interactive voice response system (IVR) will be available.

Rust will also establish a post office box and a dedicated e-mail inbox to allow Class Members to communicate any specific requests or questions. *Id.* at ¶ 59.

Plaintiffs respectfully submit that this process is fair and amply protects the due process rights of absent class members to know about and participate in the settlement.

## CONCLUSION

Plaintiffs respectfully request the Court enter the proposed preliminary approval order attached to the Wilson Declaration as Exhibit 2 with the following dates:

(1) Notice Date: 30 days after the date of the Preliminary Approval Order;

(2) Final Claim Form Deadline: 120 days after the Notice Date;

(3) Final Objection/Opt-Out Deadline: 120 days after the Notice Date;

(4) Late Claim Form Deadline: 30 days after the Final Claim Form Deadline;

(5) Deadline to move for Final Approval: 15 days before Fairness Hearing;

(6) Fairness Hearing: no less than 30 days after the Late Claim Form Deadline.

Dated: April 5, 2024
      New York, New York

                  EMERY CELLI BRINCKERHOFF
                  ABADY WARD & MAAZEL LLP

        By: _____ /s/ _____
           O. Andrew F. Wilson
           Matthew D. Brinckerhoff
           Sana Mayat
           600 Fifth Avenue, 10th Floor
           New York, New York 10020
           (212) 763-5000

           SURVEILLANCE TECHNOLOGY
           OVERSIGHT PROJECT
           Albert Fox Cahn
           David Alfasi Siffert
           c/o Urban Justice Center
           40 Rector Street
           Ste 9th Floor
           New York, New York 10006
           (646) 602-5600

           *Attorneys for Plaintiff Class*